IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

JEANNE STEIGERWALD,

        Plaintiff,

  vs.

BHH, LLC, et al

        Defendants.

CASE NO. 15-CV-00741

JUDGE PATRICIA A. GAUGHAN

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

DATED: December 1, 2015

Patrick J. Perotti (0005481)
Nicole T. Fiorelli (0079204)
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
(440) 352-3391
Email:  pperotti@dworkenlaw.com
         nfiorelli@dworkenlaw.com
         fbartela@dworkenlaw.com

*Attorneys for Plaintiff Jeanne Steigerwald*

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ ii

Table of Authorities ........................................................................................................... iii

I.    Introduction ............................................................................................................... 1

II.   Factual Statement ...................................................................................................... 2

      A.  Background on Defendants' Consumer Products ............................................ 2

      B.  Representative Packaging And Sales Of The Electronic Pest Repellers ........ 4

      C.  Plaintiff Steigerwald – A Typical Consumer ................................................. 5

III.  Law and Argument .................................................................................................... 6

      A.  Ascertainability .............................................................................................. 6

      B.  Numerosity ..................................................................................................... 9

      C.  Commonality ................................................................................................... 9

      D.  Typicality ...................................................................................................... 10

      E.  Adequacy of Representation .......................................................................... 10

      F.  Common Questions Predominate .................................................................. 10

            1.   The Class Members' Fraud Claims Can Be Resolved Through Common
                 Legal Issues in Multiple Jurisdictions ............................................... 11

            2.   The Ohio Fraud Claim Is Appropriate For Class Certification .......... 14

            3.   The Plaintiff's Breach of Warranty Claims Can Be Resolved Through
                 Common Legal Issues in Multiple Jurisdictions ................................ 15

      G.  Superiority .................................................................................................... 18

IV.   Conclusion ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Amato v. General Motors Corp.*, 11 Ohio App. 3d 124 (8th Dist. 1982) ..........................15

*Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565 (6th Cir. 2004) .................................10

*Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877 (6th Cir. 1997)..................................9

*Califano v. Yamasaki*, 442 U.S. 682(1979) ...........................................................11

*Chemtrol Adhesives, Inc. v. American Manufacturers Ins. Co.,* 42 Ohio St. 3d 40 (1989)..........17

*Ebin v. Kangadis Food, Inc.,* 297 F.R.D. 561 (S.D. NY 2014) .......................................13

*Edwards v. McCormick*, 196 F.R.D. 487 (S.D. Ohio 2000) ...........................................7

*Galoski v. Applica Consumer Products,* 2015 U.S. Dist. LEXIS 114663 (N.D. Ohio 2015)
  (Nugent, J.) ........................................................................................17

*Galoski v. Applica Consumer Products*, 2015 U.S. Dist. LEXIS 114661 (N.D. Ohio 2015)
  (Nugent, J.) ....................................................................... 1, 7,9, 11, 17

*Givens v. Van Devere, Inc.,* 2012 U.S. Dist. LEXIS 131931 (N.D. Ohio 2012)( Lioi, J.) .................. 6

*Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. 2013)..........................8

*Hamilton v. Ohio Sav. Bank*, 82 Ohio St. 3d 67 ....................................................15

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ..........................................11

*Hart v. BHH, LCC,* Case No. 1:15-cv-04804, (S.D.N.Y. 2015)........................................ 18, 19

*In re American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir. 1996) ................................10

*In re Cordis Corp. Pacemaker Product Liability Litig.,* MDL No. 850, Case No. C-3-86-
  543, 1992 U.S. Dist. LEXIS 22612 (S.D. Ohio, Dec. 23, 1992)..................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768(3rd Cir. 1995) ..................13

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3rd Cir. 2009) ................................12

*Johnson v. Monsanto Co.,* No. 11-02-02, 2002-Ohio-4613, (3d Dist.)................................16

*Kinder v. Northwestern Bank*, 278 F.R.D. 176 (W.D. Mich. 2011) ..................................7

*Landsman & Funk PC v. Skinder-Strauss Associates,* 640 F.3d 72 (3d Cir. 2010) ......................19

*Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576 (S.D. Ohio 1993) ..................................15

*McCrary v. Elations Co., LLC,* 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. 2014) ........................ 8

*McKinney v. Bayer Corp.*, 744 F. Supp.2d 733 (N.D. Ohio 2010)................................ 15, 16

*Meznarich v. Morgan Waldron Ins. Management*, 2011 U.S. Dist. Lexis 113237 (N.D.
  Ohio 2011) .........................................................................................15

*Phillips Petroleum Co. v. Shutts* 472 U.S. 797 (1985) ...............................................18

*RDLG, LLC v. Leonard*, 2014 Bankr. LEXIS 1001 (Bankr. E.D. Tenn. 2014)................................13

*Rikos v. P&G*, 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio 2014) ........................... 7, 8, 11

*Rikos v. P&G,* 799 F.3d 497 (6th Cir. 2015) .........................................................7

*Risner v. Regal Marine Industries, Inc.,* 8 F. Supp.3d 959 (S.D. Ohio 2014)................................16

*Rugumbwa v. Betten Motor Sales,* 200 F.R.D. 358 (W.D. Mich. 2001). ................................18

*St. Clair v. Kroger Co.*, 581 F. Supp.2d 896 (N.D. Ohio 2008) ................................ 15, 16

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011).................................. 12, 13

*Volbers-Klarich v. Middletown Management, Inc.,* 125 Ohio St.3d 494, 2010-Ohio-2057 .......14

*Voytovich v. Bangor Punta Operations, Inc.,* 494 F.2d 1208 (6th Cir. 1974)................................16

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)..................................7

## Statutes

Ohio Rev. Code § 1302.26(A)..........................................................................16

**Rules**

FRCP 23.......................................................................................................................................... passim

## I.    <u>Introduction</u>

This case is simple and straightforward. The Plaintiff contends that the ultrasonic pest repellers sold by Defendants are worthless. The devices could be used in different homes, different locations, or for different pests, but no matter what the circumstances the devices do not work anywhere, anytime, anyhow. They simply cannot do the one thing they purport to do: repel pests. If that central allegation is shown to be correct, then every class member is entitled to identical relief: a refund of their purchase price. Such claims are ideal for class certification. In fact, Judge Nugent recently certified a similar case as a class action, in a lawsuit challenging pest repellers marketed by another company. *Galoski v. Applica Consumer Products,* 2015 U.S. Dist. LEXIS 114661, at *4-5 (N.D. Ohio 2015)(Nugent, J.)

The uniformity of this case is found in the product's singular purpose: to repel pests. Unlike cases dealing with products purchased for different reasons, with this item there is no possibility that one customer bought for taste, one for diet, another for shelf life. For every customer, the product is bought for one thing alone: to repel pests. That is the only factual representation made by Defendant about the product: it will repel pests. If Defendant made that representation knowing it was false, that is fraud under the law of any state.

Since at least 2011, Defendants preyed on consumers' fear of pests by selling them a product marketed to repel pests. See Deposition Transcript Jeffrey Mishan. pp. 25-29 (also acknowledging that the devices were sold for sometime prior to 2011) (transcript attached hereto as Exhibit A).  Making this scam more insidious, Defendant licensed the well respected Bell and Howell trade name to this product. See Mishan Tr. pp. 25-29; BHH,LLC000309-310 (certificates of authority for Defendants to use the Bell and Howell logo) attached hereto as Exhibit B. Unbeknownst to the consumer, Defendant's product cannot do what it represents. Instead, it is a

modern form of 'snake oil' purveyed by Defendant to serve no other purpose than to enrich Defendant. Consumers across the country spent nearly one million dollars attempting to rid their homes of pests by using Defendants' pest repellers.

Plaintiff, Jeanne Steigerwald, filed this putative class action against Defendants for their unlawful practice of advertising and marketing these "ultrasonic" pest repellers. Plaintiff now moves for class certification under Rule 23 on the claims brought in her Complaint. See Doc. #1. That class is all persons who purchased one or more ultrasonic pest repellers manufactured and/or marketed by Defendants during the putative class period, including, but not limited to, the Bell and Howell branded ultrasonic pest repellers from April 16, 2011 to April 16, 2015.

Plaintiff also respectfully requests that the Court certify a class of all Ohio residents: who purchased one or more  ultrasonic pest control devices manufactured and/or marketed by Defendants during the putative class period, including, but not limited to, the Bell and Howell branded ultrasonic pest repellers from April 16, 2011 to April 16, 2015.

## II.     <u>Factual statement</u>

### A.  Background on Defendants' consumer products

Defendants, BHH, LLC, Van Hauser, and E. Mishan & Sons (herein "Emson") are all owned and operated by the same group of family members.  Both Van Hauser and Emson are run by Eddie, Jeffrey, and Steven Mishan.  Mishan Tr. 9-12.  Van Hauser and Emson market and sell products under brand names, such as Bell and Howell.  Mishan Tr. 16-17, 19.  BHH, LLC does not actually sell any products under its own name, but instead enters into licensing agreements with other companies owned by the same family, such as Van Hauser and Emson, allowing these entities to brand their products with the Bell and Howell logo. Mishan Tr. 14:23-25 ("Q: What's the purpose of BHH? What is its main business? A: They own the Bell & Howell brands, and

they attempt to license out the brand.")  These agreements provide Van Hauser and Emson with a license to use the third party corporation's trademark name on a certain list of products to be sold in discrete markets. Pursuant to Van Hauser and Emson's licensing agreement with BHH, LLC, Van Hauser and Emson became licensed to sell ultrasonic pest repellers under the Bell and Howell trademark in 2009, although Jeffrey Mishan, the Vice President of Van Hauser and Emson, acknowledged that the companies may have utilized the Bell and Howell logo on their products even before BHH, LLC acquired the license. Mishan Tr. 15:7-13 ("Q: Did BHH license the Bell & Howell brand before it actually bought it, or did you start BHH to actually buy the Bell & Howell brand -- Bell & Howell trademark? A: Previously we were a licensee, and then at a certainpoint in time BHH ended up acquiring the Bell & Howell brand to be able to put the brand on products themselves and also in turn license it out.")  See also Exhibit B.

After they obtained the trade-name license from BHH, LCC, Van Hauser and Emson then acquired the product design for the ultrasonic pest repellers, and began selling the product to retailers and distributors such as Wal-Mart, catalog companies, and other retailers in approximately 2011. Mishan Tr. 35:10-12; See also Defendants' sales tracking reports during the putative class period, BHH,LLC000297-303, attached hereto as Exhibit C.

Defendants continuously peddled these products for years to consumers, effectively preying on the need by thousands of customers to rid their homes of pests. However, the devices don't work. Put simply, they do not and cannot repel pests.  This is precisely why the Federal Trade Commission issued a notice to such companies regarding their advertising practices for these ultrasonic pest repellers.[1]  However, Defendants continued to sell these ultrasonic pest

---

[1] "FTC Warns Manufacturers and Retailers of Ultrasonic Pest-Control Devices" Federal Trade Commission (May 3, 2001); https://www.ftc.gov/news-events/press-releases/2001/05/ftc-warns-manufacturers-and-retailers-ultrasonic-pest-control

3

repellers to unsuspecting customers, profiting nearly a million dollars during the putative class period.

### B.  Representative packaging and sales of the electronic pest repellers

According to its own records, there were 107,782 ultrasonic pest repellers sold from 2011 through June of 2015 which amounted to nearly $900,000 in total sales.  See BHH, LLC000296, attached as Exhibit D.

Each of these ultrasonic pest repellers were sold under the Bell and Howell trademark with packaging using the exact same language: "Ultrasonic Pest Repeller." Mishan Tr. 47; BHH,LLC000292-293, 355-356 attached hereto as Exhibit E.  Key to this case, the packaging of the product was the sole form of advertisement.  Defendant did not engage any other type of marketing or advertising for the product. Mishan Tr. 88:1-89:14. Defendant relied entirely on the product's identical packaging to convey the product's purpose to the consumer. Id. The packaging clearly instructed the customer that the product was an "ultrasonic pest repeller" and that the customer could "Plug It In … Drive Pests Out!" Exhibit E. The packaging even depicts the very types of pests that the device will purportedly repel: ants, mice, rats, spiders, and roaches. Exhibit E. The sole purpose that an individual would purchase this product for is to repel pests as is clearly depicted on the product's packaging.

During the putative class period, Defendant did not sell this product to do anything else, or with any other packaging.  See Letter from Defendants dated November 16, 2015, attached hereto as Exhibit F. Each of the thousands of products were sold identically and solely for the consumer to buy to repel pests. Mishan Tr. 69-78. Defendant's message to prospective customers is clear. The device serves a singular purpose – to repel pests.

Q. Looking at the front page of the packaging, right under the phrase Ultrasonic pest repellers, there are four little pictures in a row right there. What are those?

4

A. Well, it has a picture of an ant with a little slash and it says ants underneath that. It has a picture of a mice/rat with a little slash on that, and a picture of roaches – it says roach, its cut off, with a slash on that.

Q. And right beneath that there is a phrase that says plug it in, drive pests out. Is that correct?

A. Yes.

Q.  You agree that this is representing what the product is supposed to do, correct?

A. Yes.

Mishan Tr. 51:16-52:5

### C.  Plaintiff Steigerwald – A typical consumer

Steigerwald went to her local Wal-Mart and purchased a three pack of Defendants' ultrasonic pest repeller devices during the spring of 2014 after noticing that mice had gotten into her Easter cooking supplies. Deposition Transcript of Jeanne Steigerwald 37:2-11; 51:8-11, attached hereto as Exhibit G. Steigerwald entered the Wal-Mart with a list of items to purchase including something to take care of the mice that had eaten into her Easter supplies. Steigerwald Tr. 51:12-15 ("Q. So you had a shopping list and one of the items was pest devices? A. Something—yes. Something to kill the mice or keep the mice out.").

When Steigerwald entered Wal-Mart, she noticed Defendants' product and its packaging. Steigerwald Tr. 52:4-8. After seeing Defendants' ultrasonic pest repeller on the shelf, Steigerwald read the product's packaging. Steigerwald Tr. 53:8-9 ("Q. Did you read the packaging? A. I did."); See also Exhibit E (Product Packaging). Based on this, Steigerwald purchased Defendants' ultrasonic pest repeller for approximately $25. Steigerwald Tr. 54:4-7.

Steigerwald took the product home, opened it, read the packaging and the materials inside, and then plugged the devices into outlets in several rooms of her home. She then waited for the product to do exactly what she had bought it to do – repel pests. Steigerwald Tr. 55:19 – 58:5; 60:19-25. Steigerwald placed the devices in her "pantry … into the kitchen right above the counter and one out in the garage[.]" Steigerwald Tr. 55:25-56:4. She chose these rooms for the

simple reason that anyone would decide where to use a pest repeller: those were the places that she saw evidence of pests.

However, the devices did nothing. They did not do what Defendants' packaging states they will do:  repel pests. After plugging the devices in, Steigerwald continued to see evidence of mice in her pantry and kitchen until the day she moved out of the home, nearly a year after purchasing and plugging the devices in. Steigerwald Tr. 63:16-21 ("Q. When did you stop holding out hope that they would work? A. When I decided to move because I couldn't stand the mice in my house. Q. So this was in April of 2015? A. Yeah.")

Indeed Steigerwald continued to find mouse droppings in her pantry and her kitchen after plugging in Defendants' ultrasonic pest repellers. Response to Interr. No. 4, attached hereto as Exhibit H; Steigerwald Tr.57:4-22. The ineffectiveness of the devices was so apparent that photos taken by Steigerwald, which she intended to show to her landlord, depict mouse droppings directly next to Defendants' "pest repellers." See Steigerwald000001-10, attached hereto as Exhibit I; Steigerwald Tr. 48:16-49:2.

## III.    Law and argument

The discovery conducted in this matter shows that the Plaintiff meets all of the Rule 23 requirements for class certification: numerosity, commonality, typicality, adequacy of representation, superiority, and predominance.  In addition to analyzing the requirements of Rules 23(a) and (b), courts have recognized that "ascertainability of class members [is] a prerequisite of Rule 23." *Givens v. Van Devere, Inc.*, 2012 U.S. Dist. LEXIS 131931, *15 (N.D. Ohio 2012)(Lioi, J.).  This requirement is likewise satisfied.

### A.    Ascertainability

The Sixth Circuit has explained that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012)(quoting *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)). Thus, "'the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.'" *Id.* (quoting *Moore's Federal Practice* § 23.21[3] (Matthew Bender 3d ed. 1997)); See also *Galoski v. Applica Consumer Products,* 2015 U.S. Dist. LEXIS 114661, at *4-5 (N.D. Ohio 2015)(Nugent, J.).

The ascertainability requirement is in place so that the class definition provides objective criteria "that allows a prospective class member to identify himself or herself as having a right to recover or opt out based on the description." *Rikos v. P&G*, 2014 U.S. Dist. LEXIS 109302, *17 (S.D. Ohio 2014); *Rikos v. P&G,* 799 F.3d 497 (6th Cir. 2015) (affirming ruling of district court on ascertainability); *Kinder v. Northwestern Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (citing *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000)) ("classes should be defined to specify a particular group at a particular time and location … harmed in a particular manner.")

Ascertainability is most easily met in suits which relate to refunds for a specific product, since a customer will know if they purchased the item.  In *Rikos,* a recent case in this Circuit, the plaintiff brought a putative class action on behalf of all individuals in five states who purchased a dietary supplement, on the basis that the manufacturer made false claims about the product. The Defendant opposed class certification, claiming that not every sale was contained in company records, so class membership could not be determined. But the test is not whether defendant has

a record of the sale, but whether the definition allows a person to know they were a customer in that class.  So in rejecting defendant's challenge, the court explained:

> [f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria … Courts in this Circuit routinely certify classes of purchasers of over-the-counter products where it will be impossible to identify and notice every member of the class. To deny certification on ascertainability grounds in this case would be to abandon the law in the Sixth Circuit that only requires that the class definition describe objective criteria that allows a prospective class member to identify himself or herself as having a right to recover or opt out based on the description.

*Rikos*, 2014 U.S. Dist. LEXIS 109302, *17-18.

Plaintiff's proposed class provides objective criteria that will allow every class member to easily determine if they are included in the class.  Did the individual purchase one of the Defendants' electronic pest repeller devices?  Did the individual make this purchase in the United States? Was the purchase within the stated time period?

This objective definition does not implicate the merits, and does not call for individualized assessments. Rather, a class definition based on purchase of an identified item is the classic method to identify class members. *Rikos*, 2014 U.S. Dist. LEXIS at *23 (noting that the proposed class definition consisted of "all consumers who purchased the product within the relevant time period and in the relevant states" as being 'defined by classic categories of objective criteria.); *McCrary v. Elations Co., LLC,* 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. 2014)(finding ascertainability where "the class definition clearly define[d] the characteristics of a class member by providing a description of the allegedly offending product and the eligible dates of purchase"); *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *18 (C.D. Cal. 2013) (finding ascertainability where "the requirement for membership in the class [was] whether a consumer purchased a product after a particular date[.]")

Further, Judge Nugent in *Galoski v. Applica Consumer Products*, recently certified a class in a case factually similar to the present action. *Galoski*, 2015 U.S. Dist. LEXIS 114661. In *Galoski*, the Defendant marketed and sold ultrasonic pest repellers under the Stanley Black & Decker trademark to consumers across the country but did not possess any records to identify putative class members. The Court found that ascertainability existed where the Plaintiff presented objective criteria to define the class: "[m]embers of the class must have purchased a product marketed by [Defendant], sold under the Stanley Black & Decker trademark, that represents itself as an 'ultrasonic' or 'electric pest repeller'" during the putative class period. *Id.* at *5. The same outcome should be reached in this matter.

**B.     Numerosity.**

Numerosity is satisfied if the "class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). Here, the Defendant's records confirm that 107,782 units were sold during the putative class period totaling nearly $900,000 in sales. See BHH,LLC000296, Exhibit D.  Joinder is therefore impracticable.

**C.     Commonality.**

Commonality is satisfied under FRCP 23(a)(2) if there is a common question of law or fact. *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 884 (6th Cir. 1997). There are specific, common questions in this case, for which common proofs apply to all class members, including: (1) whether Defendants' representations were based on competent and reliable evidence; (2) whether Defendant's pest repeller can actually repel pests (see *Galoski*, 2015 U.S. Dist. LEXIS 114661, at *7); (3) whether Defendants fraudulently represented to Plaintiff that their product would repel pests; and (4) whether Defendants fraudulently represented to Plaintiff that their product was proven to repel pests.

9

### D.     Typicality.

Under FRCP 23(a)(3), the claims of the representative plaintiff must be typical of the claims of the class. To "meet the typicality requirement, the plaintiffs must show that their 'injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.'" [Citations omitted.] *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 572 (6th Cir. 2004). Steigerwald's claim is typical because the wrong to her – Defendant marketing and selling a product that does not do what it says it does – is the exact same as the wrong to the class. The only thing this product is sold for is to repel pests, in packages that make the same representation to everyone. Mishan Tr. Pp. 51:16-52:5.  If the product will never, under any circumstances, perform that task, a refund claim for the product is common and identical for every customer.

### E.     Adequacy of representation.

Steigerwald adequately represents the class because (1) her interests are not antagonistic to those of the class she seeks to represent; and (2) she vigorously prosecutes the interests of the class through qualified counsel. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1083 (6th Cir. 1996). Steigerwald has no interests antagonistic to those of the class members she seeks to represent. See Steigerwald Affidavit, attached hereto as Exhibit J. Also, she has vigorously prosecuted this claim, successfully defending a motion to dismiss with respect to several claims and engaging in discovery.  Further, her attorneys focus their practice on class-action litigation and are regarded as highly qualified in this field. Perotti Affidavit; Bartela affidavit; Fiorelli affidavit, attached hereto collectively as Exhibit K.

### F.     Common questions predominate.

The proposed class is properly certified under FRCP 23(b)(3) because questions of law or fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy. Common questions predominate when there is a significant aspect of the case that can be resolved for all class members in a single adjudication. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the common questions are described above and are straightforward—did Defendant represent to every customer that the product would "repel pests" and does it do so under any condition? Those answers affect every customer identically and do not depend on any individualized conduct. *Rikos*, 2014 U.S. Dist. LEXIS 109302, at *39; *Galoski*, 2015 U.S. Dist. LEXIS, at *7 ("The only question of fact in this case is whether the Defendant's product can, under any circumstances, act as [a] pest repeller. This question is common to all users of the product, and, all potential class members.").

### 1. The class members' fraud claims can be resolved through common legal issues in multiple jurisdictions.

Plaintiff is moving for certification of a class of Ohio customers, and also a national class of customers.  The U.S. Supreme Court has confirmed that certification of national classes are proper if the claim otherwise meets all requirements of Rule 23. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979) ("The certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court.")

The types of cases which are difficult to certify as national classes are those involving disparate conduct between various regions of the company's operations. Or those with variations from plant to plant in the formulation of the challenged product, or differing conduct of the consumers in varied geographies which affect the claims made. Those differences can produce varying rules of law from state to state about the conduct.

11

In contrast, classes which allow national certification are those which present a uniform claim for challenging a product, or conduct which is identical regardless of customer, date, time, location, or any other factor. When the cause of action implicates no variation or nuance of the black letter law on the subject, a ruling for the plaintiff is properly applied to every customer. Plaintiff's suit makes a uniform ***threshold*** challenge to the pest repeller:  does it work at all, in any circumstances? The answer is simple: no model, in any environment or for any pests, will work.

All states recognize black letter common law fraud in the sales context: a representation intended to be relied on by the customer, which results in purchase of the product, where the supplier knows the representation is untrue. See Exhibit L, Plaintiff's Chart of Fraud Case Law. Defendant's conduct in providing a product used for only one reason, to repel pests, and selling it by representing that it "repels pests," when Defendant knows it does not under any circumstances, is fraud in every jurisdiction. The allegations are so basic that defendant can find no jurisdictional difference that will challenge the certification of a national class.

"Federal Rule of Civil Procedure 23(c)(5) states that '[w]hen appropriate a class action may be divided into subclasses that are each treated as a class under this rule.'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3rd Cir. 2009). Courts should approve the "certification of nationwide (b)(3) litigation classes where 'the laws of 50 states could be reduced to [several] general patterns, providing the framework for sub-classes if the nationwide actions had proven unmanageable.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302 (3d Cir. 2011). Notably, even where a court deems a 50 state national fraud class inappropriate, the court may properly certify a multi-state class of jurisdictions with a substantially identical common law fraud cause of action. Certification of a multi-state class is within the discretion of the court.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302 (3d Cir. 2011) (noting that it is within a court's discretion to certify a multi-state class); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817-18 (3rd Cir. 1995)(""the laws of the 50 states could be reduced to [several] general patterns, providing the framework for sub-classes if the nationwide action had proven unmanageable.")

Ohio's common law fraud cause of action is in accord with the law of all other states, except Louisiana and North Dakota, which do not have a common law fraud claim (only a statutory one). See Exhibit L, Plaintiff's Chart.

Defendant will likely argue that there are differences on reliance and scienter, which bar a multi-state class certification. First, other courts have disagreed. See e.g. *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 570 (S.D. NY 2014) (certifying a multi-state class with a fraud claim after conducting a survey of each state's common law fraud cause of action some of which included justifiable, while others required reasonable reliance).

Moreover in this case, potential differences on reliance and scienter are not implicated. "[i]t is well established … that a finding of reasonable reliance includes the lesser standard of justifiable reliance." *RDLG, LLC v. Leonard*, 2014 Bankr. LEXIS 1001, at *41 (Bankr. E.D. Tenn. 2014) Thus, where the claim involves an act by the victim which could not be motivated by any other thing, reliance is shown *sine qua non.* Here, the only reason the customer buys this product is to use as a pest repeller. So there is no reason to decide if the action by the victim  (the reliance) was reasonable, or only was justifiable. The same is true for the scienter requirement. The evidence Plaintiff offers is Defendant tells all customers the product works, when it knows it does not. Plaintiff will present expert testimony, tracking the FTC's findings, that show ultrasonic pest control does not work. If the jury agrees, then for the entire class of all customers,

Defendant's statement to the contrary was a knowing lie. This is the epitome of the 'snake oil' salesman peddling a wholly empty promise. Either the jury makes such a finding, or does not. Either way, every customer is identically situated, and Defendant is liable in jurisdictions that require the defendant's knowledge of the falsity of its representation and those that only require a recklessness finding.

As the Southern District of Ohio has explained, although "there are differences in the standards which govern ... fraud, the similarities outweigh the differences.... Defendants do not argue that proof of misrepresentation, materiality of misrepresentation and reliance are not required by every jurisdiction." *In re Cordis Corp. Pacemaker Product Liability Litig.,* MDL No. 850, Case No. C-3-86-543, 1992 U.S. Dist. LEXIS 22612, at *51 (S.D. Ohio, Dec. 23, 1992).

### 2. The Ohio fraud claim is appropriate for class certification.

Plaintiff's fraud claim is also appropriate for certification of an Ohio class. Common law fraud is the same in Ohio as elsewhere, requiring "(1) a representation … (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and reckless as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers-Klarich v. Middletown Management, Inc.,* 125 Ohio St.3d 494, 2010-Ohio-2057, at ¶ 27.

The claim here is the purest form of fraud because it is a representation about the essential and only element of the product: that it can repel pests. And it is false. Defendant has acknowledged that its actions were uniform throughout the state of Ohio and the entire country during the class period: Defendant marketed the product identically with the statement it would repel pests with ultrasonic waves. Mishan Tr.51:16-52:5, 88 (the products all contained the same

14

packaging, and this was the only advertisement for the product); See also Exhibit F (letter from defense counsel), Exhibit E (product packaging). The product is not bought or sold for any other reason than to repel pests, so there is no issue that every class member reasonably relied on the misrepresentation in the title of the product—ultrasonic pest repeller. *Amato v. General Motors Corp.*, 11 Ohio App. 3d 124, 127-128 (8th Dist. 1982)("[P]roof of reliance may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class.")

Certifying fraud claim also importantly avoid hundreds of thousands of persons individually pursuing the identical fraud question at issue here. Courts certify fraud cases for that specific reason. See *Hamilton v. Ohio Sav. Bank*, 82 Ohio St. 3d 67, 80 (court below abused discretion in failing to certify a class asserting fraud and unjust enrichment claims where the claims related to standard contracts and procedures); *Meznarich v. Morgan Waldron Ins. Management*, 2011 U.S. Dist. Lexis 113237, at *17 (N.D. Ohio 2011) (certifying fraud claim where misrepresentations were the same, even though made on different occasions); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D. Ohio 1993) (certifying fraud claim where identical forms and routine procedures were used across class).

This case is suited for class treatment. Every issue focuses solely on the conduct of Defendant. Does the product—sold for the sole purpose of repelling pest—work? Steigerwald relied upon this when buying the product, as would every other customer. Steigerwald Tr. 51-52.

### 3. The Plaintiff's breach of warranty claims can be resolved through common legal issues in multiple jurisdictions.

A multi-state warranty class should also be certified here. Under Ohio law, a breach of express warranty requires "(1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4)

the plaintiff suffered an injury as a result of the defect." *McKinney v. Bayer Corp*., 744 F. Supp.2d 733, 753 (N.D. Ohio 2010) (citing *St. Clair v. Kroger Co*., 581 F. Supp.2d 896, 902 (N.D. Ohio 2008).

First, an express warranty existed here. "[A]n advertisement may be the basis of an express warranty." *Risner v. Regal Marine Industries, Inc.,* 8 F. Supp.3d 959, 991 (S.D. Ohio 2014) ("a seller's advertisement of its product may constitute an express warranty so long as the statement in the advertisement satisfies Ohio Rev. Code § 1302.26(A) (*i.e.,* the statement either constitutes an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]") The fact that class members in this case relied on the express warranty--that the pest repellers would actually repel pests--is undisputed. That is the sole reason that Defendants sold them, and consumers purchased them. The statement is made in the very title of Defendant's product.

Further, privity of contract as a basis for an express warranty is not required in Ohio. *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir. 1974) ("Under Ohio law it is clear that a purchaser who relies on the express warranty of a manufacturer in purchasing goods, and suffers injury or loss of bargain, may directly sue the manufacturer."). As the Third District explained: "[T]o preclude [an action for breach of warranty under the UCC for a lack of privity] when a manufacturer has induced a party, by way of express warranty, to purchase one of its products from an intermediary would be unconscionable.' Otherwise, a party would be able to make express warranties about its products and then shield itself from liability by selling to a middleman[.]" *Johnson v. Monsanto Co.,* No. 11-02-02, 2002-Ohio-4613, ¶ 14 (3d Dist.).

16

Second, Defendant's ultrasonic pest repellers do not do the one thing they are meant to do—repel pests. Proof of this will be presented in the form of expert testimony by the Plaintiff at trial.

Third, the Supreme Court of Ohio has rejected a rule that pre-litigation notice of a breach of warranty is required. While other courts have held that the filing of a complaint cannot constitute notice of a breach, the Supreme Court "decline[d] to adopt such an absolute rule" and stated that they "believe in a proper case the filing of a civil complaint could serve as notice of breach." *Chemtrol Adhesives, Inc. v. American Manufacturers Ins. Co.,* 42 Ohio St. 3d 40, 54 (1989); *Galoski v. Stanley Black & Decker, Inc.,* 2015 U.S. Dist. LEXIS114663, at *16-17 (N.D. Ohio 2015) (holding that pre-suit notice may be fulfilled by filing of a civil complaint in a nearly identical claim action against Defendants for the ineffectiveness of their ultrasonic pest repellers.)

Fourth, Plaintiff was harmed by the failure of Defendant's product to do the one thing it was meant to do. Indeed, all class members were uniformly harmed by Defendant.

The law of express warranty in Ohio is akin to that of several other states which makes certification of a multi-state class including the following states appropriate: Alaska, California, Colorado, Iowa, Maine, Minnesota, New Hampshire, New Jersey, Ohio, Oklahoma, and Texas. See Plaintiff's Chart of Express Warranty Law, attached hereto as Exhibit M; See also *Galoski*, 2015 U.S. Dist. LEXIS 114661, at *15 (certifying classes in Ohio, Colorado, California, New Jersey, and Texas where plaintiff brought a breach of express warranty claim against Defendant for the ineffectiveness of their ultrasonic pest repellers.). The decisions cited in Plaintiffs' Exhibit M demonstrate that these jurisdictions, in the same fashion as Ohio, require neither privity nor pre-litigation notice.

G.      **Superiority.**

Under FRCP 23(b)(3), the proponent of class certification must show that a class action is the superior method for the fair and efficient administration of the controversy. The factors considered to determine whether a class action is superior to individual actions are: (1) the interest of the class members in controlling the litigation; (2) the extent of any litigation already initiated by class members; (3) the desirability of concentrating the litigation in a single forum; and (4) the management difficulties likely to be encountered if a class is certified. *Rugumbwa v. Betten Motor Sales,* 200 F.R.D. 358, 367-68 (W.D. Mich. 2001). All of these factors weigh in favor of certifying the proposed class.

(1) The individual class members have no interest in controlling the litigation. It is not feasible for class members to file and litigate their own small dollar cases.   "Class actions…permit the plaintiffs to pool claims which would be uneconomical to litigate individually. ...[M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 809.  Here, the named Plaintiff purchased Defendant's ultrasonic pest repeller in 2014 for approximately $25. Steigerwald Tr. 54:4-7. Her damages are $25: a return of the price of the ultrasonic pest repeller. Even class members that may have several units would not have damages exceeding a few hundred dollars. Such claims are unlikely to be filed individually, and it is unlikely they have any interest in controlling the present litigation.

(2) Only one other case has been brought in relation to Defendant's ultrasonic pest repellers, but the extent of such litigation does not weigh against certification here. See E. Mishan Discovery Responses, dated September 3, 2015, Interrogatory No. 15, attached hereto as Exhibit N; *Hart v. BHH, LCC,* Case No. 1:15-cv-04804, (S.D.N.Y. 2015).  The *Hart* action was

18

filed after the instant suit, and is considerably behind this action as the parties in that case are still briefing a motion to dismiss.

(3) It is desirable to concentrate this litigation in a single forum. Resolving thousands of claims in a single forum is more efficient than thousands of separate trials in small claims court. Additionally, there is "little reason to believe that individual actions are automatically efficient; plaintiffs can still face protracted litigation when they sue individually." *Landsman & Funk PC v. Skinder-Strauss Associates,* 640 F.3d 72, 95 (3d Cir. 2010).

(4)  No difficulty will be encountered in the management of the class action given the common proof and liability issues noted above. The parties are have professionally cooperated with each other and proceeded fully into discovery about the challenged conduct for sales nationally not merely Ohio.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests this Court to certify the proposed class for fraud for Ohio and on a national basis except Louisiana and North Dakota; and for breach of express warranty for Alaska, California, Colorado, District of Columbia, Iowa, Kansas, Maine, Minnesota, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, and Texas.

<div style="margin-left:40%">

Respectfully submitted,

*s/ Frank A. Bartela*
Patrick J. Perotti (0005481)
Nicole T. Fiorelli (0079204)
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
(440) 352-3391
Email:    pperotti@dworkenlaw.com
          nfiorelli@dworkenlaw.com

</div>

fbartela@dworkenlaw.com

*Attorney for Plaintiff Jeanne Steigerwald*

### CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2015, a copy of the foregoing *Plaintiff's Motion for Class Certification* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

 *s/ Frank A. Bartela*
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.

*Attorney for Plaintiff Jeanne Steigerwald*

20