IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| JEANNE STEIGERWALD, | CASE NO. 1:15-cv-00741 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| BHH, LLC, et al | |
| Defendants. | |

DATED: January 25, 2016

Patrick J. Perotti (0005481)
Nicole T. Fiorelli (0079204)
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
(440) 352-3391
Email:   pperotti@dworkenlaw.com
           nfiorelli@dworkenlaw.com
           fbartela@dworkenlaw.com

*Attorneys for Plaintiff Jeanne Steigerwald*

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities ................................................................................................ ii

I.   Introduction ................................................................................................1

II.  Law and Argument ....................................................................................1

   A.  The putative class is ascertainable ......................................................1

      1.  The putative class is ascertainable because the class definition provides objective criteria that will allow putative class members to self identify .............1

      2.  A notice and claims process can be institutes to ensure Defendants' due process interests are protected ...............4

   B.  Questions of law and fact are common to the class .......................................6

   C.  Plaintiff's claims are typical of the class that she seeks to represent...........9

      1.  Plaintiff's claims are not barred under Ohio law ..................................9

      2.  Pre-suit notice of a breach of express warranty ................................10

      3.  Plaintiff is an adequate class representative.......................................12

      4.   Plaintiff's claim asserts simply that Defendants' ultrasonic pest repellers did not and could not repel pests as represented to consumers..........................13

   D.  The Predominance Requirement is Satisfied ............................................15

      1.  Fraud ......................................................................................15

      2.  Breach of Warranty..................................................................18

   E.  A Class Action is the Superior Method for Adjudicating these Claims ....................19

III.  Conclusion ................................................................................................20

Certificate of Service ..............................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ........... 7

*Beyond the Garden Gate v. Northstar Freeze-Dry Mfg.,* 526 N.W.2d 305 (Iowa S. Ct. 1995) ... 18

*Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234  (N.D. Cal. 2014) ............. 5

*Carder-Buick Olds Co. v. Reynolds & Reynolds*, 2002-Ohio-2912 (2nd Dist. 2002) ................. 14

*Chemtrol Adhesives, Inc. v. American Manufacturers Ins. Co.*, 42 Ohio St.3d 40 (1989) ........... 10

*Cope v. Metro Life Ins. Co.,* 82 Ohio St. 3d 426 (Ohio S. Ct. 1998) .................................. 4, 14, 15

*Crest Res., Inc. v. Dan Blocker Petro. Consultants,* 2014 U.S. Dist. LEXIS 35964
(N.D. Ok. 2014) ........................................................................................................... 19

*Dalton v. Stanley Solar & Stove*, 137 N.H. 467 (N.H. S. Ct. 1993) ............................................. 19

*Durfee v. Rod Baxter Imports, Inc*., 262 N.W.2d 349 (Minn. S. Ct. 1977) ................................. 19

*Ebin v. Kangadis Food, Inc.*, No. 13-2311, 297 F.R.D. 561 (S.D.N.Y. 2014) .............................. 2

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.3d 890
(7th Dist. 1981) ........................................................................................................... 5

*Forcellati v. Hyland's*, *Inc.*, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. 2014) .......................... 3, 5

*Fun Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd*., 242 F. Supp. 2d 1183
(M.D. Fla. 2002) ........................................................................................................... 16

*G&F Graphic Servs. v. Graphic Innovators, Inc*., 18 F. Supp. 3d 583 (Dist. N.J. 2014) ............ 16

*Galoski v. Applica Consumer Products*, 309 F.R.D. 419 (N.D. Ohio 2015) ........................ passim

*Gordon v. Boden*, 586 N.E. 2d 461 (1st Dist. Ill. 1991) ............................................................. 4, 6

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore,* 2001 U.S. Dist. LEXIS 20012 (N.D. Ill. 2001). 17

*Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67 (Ohio S. Ct. 1998) ................................. 14, 15

*Ibarolla v. Nutrex Research, Inc*., 2012 U.S. Dist. LEXIS 155721 (N.D. Ill. 2012).................... 12

*In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992) ........... 5

*In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953 (N.D. Ill. 2007) .............................. 12

*Jordan v. Global Natural Resources, Inc.*, 104 F.R.D. 447 (S.D. Ohio 1984).............................. 5

*Juarez v. Chevron USA, Inc.*, 911 F. Supp. 257 (S.D. Tex. 1995) ................................................ 16

*Lewert v. Boiron*, Case No. 2:11-cv-10803 (C.D. Cal. 2014)...................................................... 3, 6

*Lunkenheimer Co. v. Pentair Flow Control Pacificpty*, 2014 U.S. Dist. LEXIS 126395
(S.D. Ohio 2014)........................................................................................................................... 10

*Lyda Constructors, Inc. v. Butler Mfg. Co.*, 103 S.W.3d 632 (Tex App. 2003)........................... 16

*Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673 (E.D. Pa. 2011) ............................................... 11

*McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. 2014) ........................... 6

*Nixon v. United States*, 916 F. Supp. 2d 855 (N.D. Ill. 2013) .................................................... 16

*Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ..................................................... 7

*Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014) .............................................. 6

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .......................................................... 9

*Rich v. BAC Home Loans Servicing, LP*, 2013 U.S. Dist. LEXIS 189311 (Dist. Ariz. 2013) ..... 16

*Rikos v. P&G Co.*, 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio 2014) aff'd *Rikos v. P & G Co.*,
799 F.3d 497 (6th Cir. 2015) .............................................................................................. passim

*Ritt v. Billy Blanks Enterprises*, 171 Ohio App. 3d 204 (8th Dist. 2007).............................. 14, 15

*Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D.N.Y. 2014) ........................................... 14

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004).................................... 17

*Smythe Cramer Co. v. Silva*, 2013 U.S. Dist. LEXIS 151556 (N.D. Ohio Oct. 22, 2013).......... 10

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3rd Cir. 2011) ............................................................. 17

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001)................................................ 7

*Unicomp, Inc. v. Elementis Pigments, Inc.*, 1999 U.S. Dist. LEXIS 22250 (Dist. Maine 1999).. 18

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)...................................... 17

*Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722 (Tex. App. 2006) ............................. 19

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .......................................... 1, 2, 3

## Other Authorities

C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 at n.21.1 (Supp. 1982).............. 9

*Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997) .......................................... 1

## Rules

F.R.C.P., Rule 23 ....................................................................................................................... 2

I.   **INTRODUCTION**

This case is suitable for class certification, just as was the recent case certified in this court against Applica Consumer Products for bogus ultrasonic pest repellers.  The uniform issue in this case, just as in the aforementioned case, which is capable of being determined class wide, is simple – does Defendants' product repel pests as it claims to do?  If not, then every customer would be entitled to a refund of their money (and potentially an additional recovery for fraud). Defendants attempt to muddy the waters by arguing that every class member had different expectations and different results from the product.  Proof that the product cannot work for *anyone*, however, is the crux of this suit.  This case exemplifies the conventional snake oil claim: this product does nothing.  Every device sold was marketed as a "pest repeller" and for no other reason.  If the device cannot repel any pests for any customer, the class is entitled to relief and class certification should be granted.

II.   **LAW AND ARGUMENT**

    **A.  The putative class is ascertainable.**

       **1.  The putative class is ascertainable because the class definition provides objective criteria that will allow putative class members to self identify.**

For the ascertainability prong to be met, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012) (quoting *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).  The Court must be able to conclude who is a member of the class using objective criteria.  *Id.*  Here, despite Defendants' claims of individualized inquiry, the objective criteria are simple:  Plaintiff's proposed class consists of the individuals who purchased one of Defendants' Ultrasonic Pest Repellers between April 16, 2011 to April 16, 2015.

Defendants argue that the class is not ascertainable as it "requires individualized assessments, and therefore is not administratively feasible." Defendants' Opposition at 7. According to the Defendants, this failure of administrative feasibility stems from the lack "of demonstrable proof" by class members that they actually purchased the product at issue here. *Id.* That is not the law. The Sixth Circuit, in *Rikos v. P&G Co.,* 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio 2014) aff'd *Rikos v. P & G Co.,* 799 F.3d 497, 527 (6th Cir. 2015), rejects Defendants' position, granting class certification for claims requiring affirmation by the class. The Court in *Rikos* specifically noted that:

> [f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria … Courts in this Circuit routinely certify classes of purchasers of over-the-counter products where it will be impossible to identify and notice every member of the class. To deny certification on ascertainability grounds in this case would be to abandon the law in the Sixth Circuit that only requires that the class definition describe objective criteria that allows a prospective class member to identify himself or herself as having a right to recover or opt out based on the description.

Rule 23 does not give license to defeat review of widespread improper conduct by distributors through the use of retail sales. Rather, that is the way most products are presently sold. Just the opposite, the courts have noted that Defendants' argument "would render class actions against producers almost impossible to bring." *Ebin v. Kangadis Food, Inc.*, No. 13-2311, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). In *Ebin*, a case discussed in *Rikos*, the Court granted certification to a class of consumers who purchased Defendants' mislabeled olive oil in retail stores, rejecting the claim that lack of internal product receipts was not a bar. The case, as here, alleged fraud, and the court noted that such conduct is without redress where numerous purchases of small individual loss are involved. The Court explained that "the class action device, at its very core, is designed for cases like this where a large number of consumers have

been defrauded but no one consumer has suffered injury sufficiently large as to justify bringing an individual suit." *Id.* at 567.

Judge Nugent reached the same result in this District in another case against the manufacturer of ultrasonic pest repellers. In *Galoski v. Applica Consumer Products*, 309 F.R.D. 419 (N.D. Ohio 2015), the Court certified a class of pest repeller purchasers over arguments that the individuals likely did not possess receipts. The Court explained, "[a] company's failure to keep purchase records cannot provide an automatically [sic] defense to class certification. If it could, manufacturers and other sellers could all too easily insulate themselves from all class actions by simply failing or refusing to keep to sales records. The Sixth Circuit does not require that the Defendant be able to specifically identify each class member, but only that a prospective class member be able to identify him or herself as having a right to recover or opt out based on the description of the class." *Galoski*, 309 F.R.D. at 422 (internal citations omitted).

Defendants seek to distance this case from the ruling in *Galoski* by arguing that the Court in *Galoski* "failed to appreciate" the law, claiming that current law bars cases of this type. Defendants argument is meritless and has been expressly rejected by the Sixth Circuit. In *Young v. Nationwide Mutual Insurance Co*., 693 F.3d 532 (6th Cir. 2012), the Defendant argued that the Court would be required to review millions of policies to determine which individuals were class members. The Court denied this argument noting, "the size of a potential class and the need to review" are not reasons to deny class certification. *Id.* at 539; See also *Lewert v. Boiron*, Case No. 2:11-cv-10803 (C.D. Cal. 2014) ("Lewert's proposed class is based on objective criteria— whether a consumer purchased Oscillo within the relevant class period. Even without receipts, these consumers can submit self-identifying questionnaires or similar documents identifying themselves as class members … This Court is persuaded by the reasoning of *Forcellati* and

3

similar cases holding that self-identification is sufficient.  If it were not, there could never be a class action for low-priced consumer goods.") (attached hereto as Exhibit A).

### 2.  A notice and claims process can be instituted to ensure Defendants' due process interests are protected.

The odd part of Defendants' due process argument is that the alleged 'problem' does not manifest unless and until the Defendants are found liable.  At that point it is not a manageability issue for trial or judgment, but simply a matter of claims administration.  So how would that prevent Defendants, in any way, from having their day in court?  Further, if Defendants are held liable for collecting sales revenue for an identified universe (by amount and dollar total) of products which do nothing, they are liable at minimum to disgorge all those monies.  That is the case regardless of the number of class members who ask to receive a portion of that fund. *Gordon v. Boden*, 586 N.E. 2d 461, 468 (1st Dist. Ill. 1991) (noting that class action proceedings exist to both reimburse victims by disgorging wrongfully collected money but also to deter unlawful behavior).  Courts have frequently addressed situations where individual records of a product's sales do not exist and have repeatedly found that this does not bar class certification. *Rikos*, 2014 U.S. Dist. LEXIS 109302, at *17-18 ([c]ourts in this Circuit routinely certify classes of purchasers of over-the-counter products where it will be impossible to identify and notice every member of the class.  To deny certification on ascertainability grounds in this case would be to abandon the law in the Sixth Circuit that only requires that the class definition describe objective criteria that allows a prospective class member to identify himself or herself as having a right to recover or opt out based on the description.")

Defendants contend that the class definition fails to offer any procedural due process protections.  To whom?  To the class?  That sounds like the fox guarding the chicken coop. *Cope v. Metro. Life Ins. Co.*, 82 Ohio St. 3d 426, 435 (1998)(quoting *Eggleston v. Chicago*

4

*Journeymen Plumbers' Local Union No. 130*, 657 F.3d 890, 895 (7ᵗʰ Dist. 1981) ("'it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. … It is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.'") Defendants are forced to concede that the class definition is objective and precise – all individuals who purchased Defendants' ultrasonic pest repellers within a four year timeframe.

Furthermore, notice in cases like this is commonly achieved through the use of publication notice by: (1) posting notice at retailers which sold Defendants' ultrasonic pest repellers,[1] (2) publishing notice in large newspapers with national circulation,[2] (3) hosting a website that contains the notice and all appropriate papers, and (4) publishing notice on high volume internet sources. At the end of the case, during the claims process, requiring verification by declaration to participate in any payment available is the standard practice followed by courts in similar cases. *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *21 (C.D. Cal. 2014).

Where no purchaser records exist, the use of an affidavit in the claims process is the standard method employed to address potential false claims. As part of such a process defendant may challenge any individual class member claims which appear problematic. Notice to the class allowing class members to self-identify through a court approved claim form fulfills the Defendants' interest in due process. See *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. 2014), (finding that class members who met the objective criteria that

---

[1] *Rikos*, 2014 U.S. Dist. LEXIS 109302, at *21 (noting that "posting notice at retailers satisfies due process.")

[2] Notice by publication has been approved for decades in national class actions where individual addresses/identification for class members cannot be ascertained. *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534, 548 (N.D. Ga. 1992); *Jordan v. Global Natural Resources, Inc.*, 104 F.R.D. 447, 448 (S.D. Ohio 1984).

they purchased a mislabeled Dole product in a given time period could submit affidavits to receive compensation, and that this process would not produce unreliable results.); *Lewert v. Boiron*, Case No. 2:11-cv-10803 (C.D. Cal. 2014) (reasoning "[Plaintiff]'s proposed class is based on objective criteria—whether a consumer purchased Oscillo within the relevant class period.  Even without receipts, these consumers can submit self-identifying questionnaires or similar documents identifying themselves as class members.")(Exhibit A); *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. 2014) (certifying a class of consumers who purchased a deceptively labeled product, where the Defendant possessed no records identifying individuals who purchased the product.)

Finally, as previously noted, Defendants' records clearly outline the total number of devices sold during the class period, and the total amount which Defendants collected from the sales.  If the merits of this suit show the devices to be worthless, and that Defendants sold them with complete disregard for that fact, disgorgement of that whole amount serves the interests of deterrence.  *Galoski*, 309 F.R.D. at 423 ("Further, the Defendant does have records of the total number of sales during the class period, therefore, any fear that they will have to pay out on unsubstantiated claims is somewhat mitigated as they know what their ultimate maximum responsibility would be."); *Ortega v. Natural Balance, Inc*., 300 F.R.D. 422, 430 (C.D. Cal. 2014) (noting that "Defendant's aggregate liability could be reliably determined without imposing excess liability" which would prevent prejudice to defendant.); *Gordon*, 586 N.E. 2d at 468.

### B.  Questions of law and fact are common to the class.

The issues in this case are not only common, but identical for all class members.  They all revolve around whether Defendants' ultrasonic pest repellers actually do the one thing they

purport to do – repel pests. All devices use identical technology: if Plaintiff can prove that these devices simply do not work, that determination applies to all class members.

Defendants miss the point of class certification entirely, arguing that they have 'evidence' that the pest repeller devices work, referencing Efficacy Test Reports which were produced in discovery. Whether the devices actually work cannot be litigated in a motion for class certification. The only relevant inquiry at this juncture is whether the issue of the devices' efficacy can be determined on a class-wide basis, which it can. See *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013) (Rule 23 grants "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (noting a district court's class certification inquiry is not "a dress rehearsal for the trial on the merits"); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ("A court may not say something like . . . 'I'm not going to certify a class unless I think that the plaintiffs will prevail'" ). Defendants can argue that devices were supported by scientific evidence and actually repel pests when it is time for trial, but not in opposing a motion for class certification.

Next, Defendants argue that Plaintiff's common question of whether they fraudulently represented to Plaintiff that their product was proven to repel pests is not supported by the allegations in the complaint. Defendants maintain that it did not represent to customers that the product had actually been proven to repel pests. That argument is identically made and rejected in virtually all snake oil cases. The representations challenged in these types of cases don't go to how well the products work, but whether they work at all. That is, if the product says it repels

7

pests, or cures the common cold, or makes hair grow, does it do so at all?  In the factually analogous case pending in this district, also regarding ultrasonic pest repellers, the court certified a class and found commonality based on the packaging, stating "[t]he contention in this case is that this product does not, and cannot, under any circumstances, repel pests as universally described on the packaging." *Galoski*, 309 F.R.D. at 423.  The same is true here.  The complaint in this case specifically alleges that the device was marketed as an "electronic pest repeller." Compl. ¶12.  Every purchaser would have relied on this representation.  Strangely, Defendants contend that while they marketed the device as a pest repeller, they never promised that they had any evidence it repelled pests.  As the Court noted in the *Galoski* case, "[n]o one would have bought a pest repeller had they known that it was incapable of repelling pests." *Galoski*, 309 F.R.D. at 423.

Defendants also assert that there is no common way to judge whether the pest repellers were actually effective for repelling pests in a given class member's home.  Plaintiff's contention is that these devices do not provide any benefit whatsoever, under any circumstances, meaning that Plaintiff claims that the devices never work.  This will be demonstrated on a class wide basis.  In *Rikos*, where the defendants sold a dietary supplement which the plaintiffs claimed never worked under any circumstance, the court granted class certification finding that plaintiffs' assertion "that Align is worthless—is capable of resolution through classwide scientific proof such that common issues predominate." *Id.* at 520.  As stated by the Court in *Galoski*, "[b]ased on the allegations in the Complaint, either 0% or 100% of the proposed class members have been harmed." *Galoski*, 309 F.R.D. at 423.

Finally, Defendants argue that the question whether Defendants fraudulently represented to Plaintiff that their product would repel pests is not a question which can be answered on a

common basis because it is dependent on how class members interpreted Defendants'
representations and their own expectations.  This argument fails for the same reasons discussed
above.  The only purpose that the product served was to repel pests.  If the product was incapable
of performing this function, it was completely worthless and there would be no reason
whatsoever to purchase it.  As the *Galoski* Court has already succinctly reasoned, "[n]o one
would have bought a pest repeller had they known that it was incapable of repelling pests."
*Galoski*, 309 F.R.D. at 423.

The questions in this case are not only common, but identical.  Can Defendants' pest
repellers actually repel pests?  Whether the devices had the ability to work will either be
answered in the affirmative or the negative, but it will be answered classwide, making this case
perfectly suited for class certification.

### C.  Plaintiff's claims are typical of the class that she seeks to represent.

Typicality "is generally considered to be satisfied 'if the claims or defenses of the
representatives and the members of the class stem from a single event or are based on the same
legal or remedial theory.'" *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982)
(quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 at n.21.1 (Supp. 1982)).
That standard is met here, where the facts of each putative class members' claims are identical.
They all purchased one of Defendants' pest repellers.

### 1.  Plaintiff's claims are not barred under Ohio law.

Defendants argue that Plaintiffs' claims are not typical of the class because her own
claims for fraud and breach of warranty are barred under Ohio law.  Specifically, Defendants
argue that asserting a contract claim precludes a tort claim that is based on the same conduct.  It
is well-established that parties can plead both contract and fraud based claims in the alternative.

9

See e.g. *Lunkenheimer Co. v. Pentair Flow Control Pacificpty*, 2014 U.S. Dist. LEXIS 126395, at *38 (S.D. Ohio 2014) ("The law similarly permits a plaintiff to plead fraud as an alternative theory to a breach of contract count."); *Smythe Cramer Co. v. Silva*, 2013 U.S. Dist. LEXIS 151556, at *13 (N.D. Ohio Oct. 22, 2013) ("Therefore, while Plaintiffs cannot recover on both breach of contract and fraud claims, they can plead fraud in the alternative").  Even if this were problematic, this is a legal issue true of all Ohio claimants, not simply the named Plaintiff, therefore, the Plaintiff's claim would still be typical.

### 2. Pre-suit notice of a breach of express warranty.

Defendants maintain that Plaintiff's claim also fails because she failed to provide pre-suit notice of the breach.  Defendants misconstrue the holding in *Chemtrol Adhesives, Inc. v. American Manufacturers Ins. Co*., 42 Ohio St.3d 40, 54 (1989), which concisely held that pre-suit notice of a breach is not always required, and the filing of the complaint itself can serve as notice.  While the notice requirement was originally introduced to allow a defendant to remedy a situation prior to suit, here, the situation could never have been remedied.  This is not a typical situation where a customer received a defective product which could be repaired, but a case where the Defendants engaged in a systematic scheme to market a product which is always defective because it can never work as advertised.  How could the Defendants replace something that doesn't work in the first place?  The only remedy for this misconduct is a refund.  The question of whether Plaintiff and the class were required to provide pre-suit notice of the breach of warranty represents a common question to all class members.

In *Galoski*, the Court considered an identical argument, also with respect to a breach of warranty claim regarding ultrasonic pest repellers, stating "[i]f ever there were a 'proper circumstance' to allow satisfaction of the notice requirement to be fulfilled by the filing of a suit

10

(a circumstance the Ohio Supreme Court has stated does exist) this case would appear to include the variables that would justify such an allowance.  In this case we have a Plaintiff who is private consumer, and she has submitted some evidence, that if developed or verified during full discovery could support a finding that Applica had actual or constructive knowledge of the alleged defect prior to the filing of this suit."  *Galoski v. Applica Consumer Products, Inc.*, 2015 U.S. Dist. LEXIS 114663, at * 16 (N.D. Ohio 2015) (That evidence was findings by the F.T.C. that these products do not repel pests.)  The complaint in the instant case references the same evidence and asserts the same constructive knowledge on Defendants through published scientific studies and warnings issued by the Federal Trade Commission.  Complaint, ¶¶17, 23.

Courts have held that when bringing a class action for a breach of warranty, it is not necessary that the named plaintiff provide the defendant with notice of the problem, holding that notice by other class members was sufficient to satisfy the notice requirement.  In *Martin v. Ford Motor Co*., 765 F. Supp. 2d 673, 682-83 (E.D. Pa. 2011), the plaintiff brought a putative class action suit asserting numerous claims, including breach of warranty, based upon the allegation that the rear axles in the defendant's vehicles were defective.  The defendant moved to dismiss the breach of warranty claims on the basis that the named plaintiff had not notified the defendant of the defect prior to filing suit.  While the court did find this to be accurate, the plaintiff argued that the defendant:

> "had longstanding knowledge of the problem," that "Defendant has been aware for years of the true nature and cause of the axle problem in the Vehicle," and that "[t]his knowledge is evidenced by widespread complaints on the internet and elsewhere about the rear axle problem, accounts from Class members who have complained about this very issue to Defendant." Further, Plaintiff alleges that "[o]wners of the vehicles publicly complained to the United States government about the rear axle problems," and that Defendant had "actual and constructive notice of the problem."  *Id*. at 683.

11

The court found this to be sufficient, finding that the defendant had notification of the defect through complaints received from other class members. This notice gave the defendant the opportunity to cure the alleged defect, which it failed to do. *Id.*

Courts have explained that direct notice to the defendant is not required under the UCC where the seller has knowledge of the defect in a particular product. *Ibarolla v. Nutrex Research, Inc*., 2012 U.S. Dist. LEXIS 155721, at *17 (N.D. Ill. 2012); See also *In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (no notice required where the defendant has actual knowledge of the defect in its product). Where there is evidence that the defendant has knowledge of the defect, notice by the plaintiff is not necessary. *Id.* Again, there was such knowledge here. Defendant is a sophisticated corporation. The Federal Trade Commission has been issuing warnings about the ineffectiveness of these products for years, and countless scientific publications refute Defendants' sales of ultrasonic pest repellers that cannot repel pests in any manner.

### 3. Plaintiff is an adequate class representative.

Next, Defendants assert that the lack of evidence that the Plaintiff here specifically relied on representations made by the Defendants makes her claims atypical to those of the class. According to Defendants, there is no evidence that the Plaintiff relied on the product packaging. First, this argument insults the intelligence of everyone in this case. The product ONLY exists to repel pests. Second, a review of Plaintiff's deposition reveals that Defendants knew this argument to be false when they made it to this Court. Plaintiff testified that she entered Wal-Mart with a list of items to purchase including something to take care of the mice that had eaten into her Easter supplies. Steigerwald Tr. 51:12-15 ("Q. So you had a shopping list and one of the items was pest devices?  A. Something—yes. Something to kill the mice or keep the mice out.").

Upon entering the store, Plaintiff noticed Defendants' product and its packaging. Steigerwald Tr. 52:4-8. After seeing Defendants' ultrasonic pest repeller on the shelf, Steigerwald read the product's packaging. Steigerwald Tr. 53:8-9 ("Q. Did you read the packaging? A. I did."); See also Plaintiff's Class Certification, Exhibit E (Product Packaging). Based on this, Plaintiff purchased the device. Steigerwald Tr. 54:4-7. She specifically relied on the product to repel the pests-- to "keep the mice out." *Id.* at 51:15.

### 4. Plaintiff's claim asserts simply that Defendants' ultrasonic pest repellers did not and could not repel pests as represented to consumers.

The Defendants go on to argue that typicality is not satisfied because there is no uniform way to judge whether the pest repeller device worked for a particular class member. Plaintiff's argument is that the devices never work under any circumstances. Under this theory of the case, the devices either repel pests as they represent on their packaging or they don't. This determination is made class wide by looking at the technology behind the devices, not conducting an individual analysis of each class member's results. As stated by the *Galoski* court, "[b]ased on the allegations in the Complaint, either 0% or 100% of the proposed class members have been harmed." *Galoski*, 309 F.R.D. at 423.

Next, Defendants contend that reliance must be demonstrated individually, which is why courts decline to certify classes involving fraud claims. Courts have repeatedly certified fraud classes, finding that certification does not pose an issue where the misrepresentations were the same. As explained by *Galoski*, "the only reliance alleged is reliance on the packaging which describes the purpose of the product and creates the warranty at issue in this case. It is safe to say that all, or nearly all, purchasers of this product relied on the packaging name and description to identify the product and its intended purpose." *Galoski*, 309 F.R.D. at 422, n. 1. Courts have

repeatedly reached the same conclusion, certifying classes in fraud claims where the misrepresentations are uniform.

It is well-established that in cases such as this one, where fraud is committed through a common misrepresentation, proof of reliance may be established by inference or presumption. The Court in *Ritt v. Billy Blanks Enterprises*, 171 Ohio App. 3d 204 (8th Dist. 2007), considered a class of consumers who were deceived into enrolling for a "free" membership but were charged an annual fee for the membership. The defendant argued that individualized issues, including reliance, required that class certification be denied. The court disagreed, "'[s]ince liability depends on whether the marketing scheme utilized by [d]efendants was misleading and/or deceptive, individualized testimony is not required regarding each person[']s decision whether or not to purchase the membership program.'" *Id.* at ¶67 (quoting trial court's order); See also *Cope v. Metro Life Ins. Co.,* 82 Ohio St. 3d 426, 430 (Ohio S. Ct. 1998) (noting "[i]f a fraud was accomplished on a common basis, there is no valid reason why those affected should be foreclosed from proving it on that basis.") See also *Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 84 (Ohio S. Ct. 1998) (the court held that based on the standardized nature of the representation at issue "proof of reliance … may be sufficiently established by inference or presumption."); *Carder-Buick Olds Co. v. Reynolds & Reynolds*, 2002-Ohio-2912, ¶¶47-48 (2nd Dist. 2002)("[F]raud cases that involve a single underlying scheme and common misrepresentations or omissions across the class are particularly subject to common proof. … Furthermore, direct evidence is not necessary to establish inducement and reliance.); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D.N.Y. 2014) (certifying fraud claims where the same uniform structured sales pitch was used on customers).

14

Here, every package states that the device included is a "pest repeller."   Mishan Tr. 55-56.  Defendants have not provided anything to suggest that a single person bought the product for another reason.  This case asserts that despite this representation, which is included in the very title of the product, the pest repellers do not work.  The fraud at issue here was committed on each and every putative class member in a common and uniform manner and reliance is manifest by every class members having purchased the product which represents that it does one thing:  repel pests.

### D.  **The Predominance Requirement is Satisfied**

#### 1.  **Fraud**

Defendants argue that common questions of law and fact do not predominate, making the same arguments as previously made with respect to commonality, arguing that reliance in a fraud claim must be shown individually, not as a class.  For the same reasons as already briefed, this argument lacks merit.  Where the fraud is uniform, such as here through the systematic marketing of a product whose only function is to repel pests, but never work, fraud can be demonstrated on a classwide basis.  See *Ritt, Hamilton, Cope*, supra.

Next, Defendants contend that the application of the economic loss rule among the different states makes certification of the fraud claim problematic.  However, it is crucial to note that Plaintiff has brought claims only for fraud and breach of warranty, not contract.  This eliminates any argument that a fraud claim is barred by the economic loss doctrine.  Defendants repeatedly reference the complaint as asserting a claim for breach of contract throughout its brief opposing class certification, in an effort to mislead this Court.  In each and every state that the Defendants have cited, the economic loss doctrine applies only where there is also a breach of contract claim.  That is not the case here as there is no breach of contract claim pending.  See

15

*Juarez v. Chevron USA, Inc*., 911 F. Supp. 257, 260 (S.D. Tex. 1995) (finding that the economic loss doctrine did not apply in the absence of contractual privity, and explaining that "[i]t is problematic to say that Plaintiff's injury is only 'economic loss to the subject of the contract' or that Plaintiff's damages are entirely contractual in nature when the alleged tortfeasors were not parties to the lease."); *Lyda Constructors, Inc. v. Butler Mfg. Co*., 103 S.W.3d 632 (Tex App. 2003) (holding that the economic loss doctrine or was not applicable to plaintiff's negligent misrepresentation claim against a defendant who was not a party to the contract); *Fun Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd*., 242 F. Supp. 2d 1183, 1200 (M.D. Fla. 2002) ("Defendants have cited no authority extending the economic loss rule to a case that does not involve a contract. As a matter of law, the affirmative defense fails.").

Courts have repeatedly declined to employ the economic loss doctrine where there is no breach of contract claim, as is the case here.  See *Rich v. BAC Home Loans Servicing, LP*, 2013 U.S. Dist. LEXIS 189311, at *33, n. 10 (Dist. Ariz. 2013)  ("The Court has found that Plaintiffs do not have a viable breach of contract claim, and thus it cannot be said that they are 'a contracting party [who] should be limited to its contract remedies for purely economic loss.'"); *G&F Graphic Servs. v. Graphic Innovators, Inc*., 18 F. Supp. 3d 583, 589 (Dist. N.J. 2014) ("the [economic loss] doctrine only applies to bar certain tort claims between parties to a contract."); *Nixon v. United States*, 916 F. Supp. 2d 855, 862 (N.D. Ill. 2013) ("Therefore, because the plaintiffs have no contract remedy, and because the Government's actions here are not the type that are normally subject to contract, the economic loss doctrine does not apply[.]").

Defendants also argue that differing statutes of limitation for the fraud claim could defeat predominance.  However, courts have concluded that differences among the applicable statute of limitations periods are not a bar to class certification.  See *Waste Mgmt. Holdings, Inc. v.*

*Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (rejecting argument that variations in twenty states' laws concerning reliance, waiver, and statutes of limitations defeated predominance); *Schumacher v. Tyson Fresh Meats, Inc*., 221 F.R.D. 605, 612 (D.S.D. 2004) ("Where federal claims and common law claims are predicated on the same factual allegations and proof will be essentially the same, 'even if the law of different states might ultimately govern the common law claims — an issue that need not and is not decided at this juncture — certification of the class for the whole action is appropriate.'"); *Hamid v. Blatt, Hasenmiller, Leibsker, Moore,* 2001 U.S. Dist. LEXIS 20012 (N.D. Ill. 2001) ("The Defendants' attempt to hinder this process by continuously raising their statute of limitations argument is unavailing, and it does not dissuade us from our conclusion that the class issues predominate over any individual issue which may be raised.")

     In *Sullivan v. DB Invs., Inc*., 667 F.3d 273 (3rd Cir. 2011), the court provided a succinct explanation of the issue:

> variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance. This is so because a finding of commonality does not require that all class members share identical claims, and predominance is not considered deficient merely because claims were subject to the [varying] laws of fifty states. Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test; rather, [a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable laws will not foreclose class certification. … Echoing this approach, our fellow Courts of Appeals have agreed that, for purposes of litigation classes, "if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards," then certification of subgroups "embracing each of the dominant legal standards can be appropriate." (Internal citations and quotations omitted).

     Defendants also contend that certification of an Ohio fraud class is also inappropriate because individual issues predominate.  Again, their arguments are premised on their repeated contentions that individualized questions regarding reliance exist.  However, the only purpose

that the pest repeller devices serve is to repel pests.  The devices were all labeled as pest repellers.  It is impossible that the class members did not rely on the representation that the product repelled pests.  As the Court in *Galoski* succinctly explained "[n]o one would have bought a pest repeller had they known that it was incapable of repelling pests."  *Galoski*, 309 F.R.D. at 423.

### 2.  Breach of Warranty[3]

Plaintiff has moved for certification of a multi-state class for breach of warranty, including Alaska, California, Colorado, Iowa, Maine, Minnesota, New Hampshire, New Jersey, Ohio, Oklahoma, and Texas.  Defendants make no argument that any of the above-referenced states require pre-suit notice; however, Defendants maintain that only Ohio, California, Colorado, New Jersey and Texas are properly included in the class because those states do not require privity for a breach of express warranty claim.  Defendants omitted the remainder of the states, implying that they require privity, but providing absolutely no citations whatsoever to support their claims.  Case law in these states supports the opposite position, that they do not require privity either.  See e.g. *Beyond the Garden Gate v. Northstar Freeze-Dry Mfg.*, 526 N.W.2d 305 (Iowa S. Ct. 1995) ("Courts allow a nonprivity buyer to recover for direct economic loss damages if the remote seller has breached an express warranty."); *Unicomp, Inc. v. Elementis Pigments, Inc.*, 1999 U.S. Dist. LEXIS 22250, at *62 (Dist. Maine 1999) ("Lack of privity does not, in itself, foreclose assertion of a claim of breach of express warranty against a remote manufacturer.  The remote purchaser generally must, however, have relied upon the

---

[3] Defendants have again argued that this claim would require individualized assessments of reliance.  The ability to prove reliance on a classwide basis has already been briefed extensively in response to Defendants' repeated arguments on this issue.  Further, as Judge Nugent explained in the analogous *Galoski* case, this is not an issue because "[i]t is safe to say that all, or nearly all, purchasers of this product relied on the packaging name and description to identify the product and its intended purpose."  *Galoski*, Order, Doc. #64, Page ID 1059, fn1.

express warranty."); *Durfee v. Rod Baxter Imports, Inc*., 262 N.W.2d 349 (Minn. S. Ct. 1977) ("If plaintiff had sued Saab-Scania for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the language of the pertinent Code sections."); *Crest Res., Inc. v. Dan Blocker Petro. Consultants,* 2014 U.S. Dist. LEXIS 35964, at *14, fn 8 (N.D. Ok. 2014) ("It appears that Crest, even if not in privity with Hexion, could assert a breach of express warranty claim, subject to any disclaimers entered into by Weatherford and Hexion"); *Welwood v. Cypress Creek Estates, Inc*., 205 S.W.3d 722, 729 (Tex. App. 2006) ("If a third party can sue a seller for breach of express warranty, as we must assume for this appeal, the seller's disclaimers of warranties apply to the third party."); *Dalton v. Stanley Solar & Stove*, 137 N.H. 467 (N.H. S. Ct. 1993) (referencing statute which provides "Lack of privity shall not be a defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, even though the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods.").

### E.  A Class Action is the Superior Method for Adjudicating these Claims

A class action is clearly the superior means of resolving the issues here.  Each class member purchased a pest repeller, which had no other advertised benefits besides its claim that it repels pests.  There was no other reason for an individual to purchase this product. This suit asserts the devices do not repel pests.  Absent a class action, the individual purchasers would never be entitled to relief, and Defendants could go on misleading customers by selling a product which does not do what it claims.  Each class members spent a small amount on these products, and would be not hire counsel to prosecute these claims.

19

### III.   <u>Conclusion</u>

This is a textbook scenario of when a class action should be certified. All class members nationwide bought the same product, represented by the Defendant as a "pest repeller," to repel pests.  If the product does not repel pests, then all of them were damaged in the exact same manner.  All class members were subject to the same representation, the same loss, and the same damage.  Plaintiff respectfully requests that her motion for class certification be granted.

Respectfully submitted,

<u>s/ Frank A. Bartela</u>
Patrick J. Perotti (0005481)
Nicole T. Fiorelli (0079204)
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077
(440) 352-3391
Email:    pperotti@dworkenlaw.com
              nfiorelli@dworkenlaw.com
              fbartela@dworkenlaw.com

*Attorney for Plaintiff Jeanne Steigerwald*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2016, a copy of the foregoing *Plaintiff's Reply in Support of Motion for Class Certification* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

 *s/ Frank A. Bartela*
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.

*Attorney for Plaintiff Jeanne Steigerwald*