**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jeanne Steigerwald,** | ) | **CASE NO.  1:15 CV 741** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **BHH, LLC, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**Introduction**

This matter is before the Court upon plaintiff's Motion for Class Certification (Doc. 19). This case involves consumer sales of electronic pest control devices which plaintiff alleges do not repel pests. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Jeanne Steigerwald filed this Class Action Complaint against defendants BHH, LLC; Van Hauser, LLC; and E. Mishan and Sons, Inc dba Emson, Inc. The Complaint originally asserted five claims. In briefing on a prior motion to dismiss, plaintiff stated that she was not pursuing Counts Three and Five. The Court granted the motion to dismiss as to Count One and

denied it as to Counts Two and Four.  Accordingly, those two claims remain: fraud and breach of express warranty. The Complaint alleges the following.

Defendants manufacture, market, and distribute electronic pest control devices that allegedly repel pests from the user's home.  Despite defendants' advertisements stating that the devices repel mice, ants, spiders, and other pests by electromagnetic/ultrasonic power using wiring within the walls to emit a signal, the devices do not repel pests.

In order to expel pests from her house, plaintiff went to a Wal-Mart in May 2013 and purchased a Bell+Howell-trademarked electronic/ultrasonic pest control device manufactured and marketed by defendant. Defendant BHH licenses the Bell+Howell trademark to defendants Van Hauser and Emson for the purpose of designing, manufacturing, distributing, marketing, and selling the ultrasonic pest control device purchased by plaintiff. The device's packaging labels it as an "electronic pest repeller" and states that it uses "ultrasonic sound waves [to] help to eliminate mice, rats, roaches, spiders, and ants." Defendants' website also states that the device uses ultrasonic power to emit a signal to drive away insects and rodents.  Plaintiff purchased the device based on defendants' representations.  Although plaintiff used the device as instructed, it did not repel pests in and/or around plaintiff's home.  The scientific literature indicates that these products have no effect on pests. Defendants had reason to know that their claims and representations were false and contrary to scientific evidence, but they continued to advertise the devices as effectively controlling pests.

The parties engaged in discovery and provide the following facts.  BHH, LLC; Van Hauser, LLC; and E. Mishan and Sons, Inc (Emson) are owned and operated by members of one family. Van Hauser and Emson market and sell products under brand names, such as Bell &

Howell. According to representative Jeffrey Mishan, the main business of BHH is owning "the Bell & Howell brands, and they attempt to license out the brand."  BHH authorized Van Hauser and Emson to purchase and sell the ultrasonic pest repellers using the Bell & Howell logo. Around 2011, the two entities then began selling the product to retailers and distributors, such as Wal-Mart, and to catalog companies. Plaintiff asserts that the devices do not work at all- "anywhere, anytime, anyhow."  In 2001, the Federal Trade Commission posted a notice stating, "Staff of the Federal Trade Commission's Division of Enforcement today announced that they have sent warning letters to more than 60 manufacturers and retailers of ultrasonic pest-control devices, stating that efficacy claims about those products must be supported by scientific evidence."

Between 2011 and June 2015, defendant sold 107,782 ultrasonic pest repellers which amounted to $897,745 in sales. The devices were sold in packaging using the language, "Ultrasonic Pest Repeller."  Other than the packaging, defendants did not engage in other advertising or marketing for the product. The packaging noted, "Plug It In... Drive Pests Out!" The packaging depicted ants, mice/rats, spiders, and roaches with a slash line through their depiction.

Plaintiff went to her local Wal-Mart and purchased a three pack of defendants' ultrasonic pest repeller devices in the spring of 2014 after noticing mice droppings in her pantry, kitchen, and garage. Plaintiff had done some research over the internet, but noticed the defendants' packaging upon arriving at the store to look for pest devices. She paid cash, approximately $25.00. At home, plaintiff read the packaging and the "little folded up paper inside."  As instructed, plaintiff plugged the devices into outlets in the pantry, kitchen, and garage.  Plaintiff

3

noticed by the next day that the devices did not deter the mice. Plaintiff continued to hope that the devices would work. Plaintiff never contacted Wal-Mart and never attempted to return the devices. Nor did she attempt to contact the manufacturer of the product.

Plaintiff "was still holding out for hope that they would start working at some point." She left the devices plugged in where they remained when she moved out about a year later because she could not stand the mice in her house. The mice problem was unabated. Plaintiff also had a problem with spiders, but used a spray which seemed to help manage them.

Defendants submit a "Bell + Howell Ultrasonic Pest Repeller Efficacy Test Report" of two companies, SGS (a Swiss entity) and Intertek (British) which performed tests in 2011 and 2012. The report concluded that the mice, rats, spiders, and ants stayed away from the pest repeller chamber when the device was on.

Plaintiff filed this lawsuit seeking to represent a class of persons who purchased an electronic pest control device manufactured and/or marketed by defendants during the class period.

**Discussion**

Plaintiff moves to certify a class of "all persons who purchased one or more ultrasonic pest repellers manufactured and/or marketed by Defendants during the putative class period, including, but not limited to, the Bell and Howell branded ultrasonic pest repellers from April 16, 2011 to April 16, 2015." (Doc. 19 at 2) Additionally, plaintiff asks to certify a class of "all Ohio residents: who purchased one or more ultrasonic pest control devices manufactured and/or marketed by Defendants during the putative class period, including, but not limited to, the Bell

and Howell branded ultrasonic pest repellers from April 16, 2011 to April 16, 2015." (*Id.*)[1]
Plaintiff asserts the following. All class members nationwide bought the same product, represented by defendants as a pest repeller, to repel pests. If the product does not repel pests, then all class members were damaged in the same manner. All class members were subject to the same representation, same loss, and same damage.

The decision to certify a class action is within the discretion of the district court, but that discretion must be exercised within the framework set forth in Federal Rule of Civil Procedure 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Before certifying a class, the district court must conduct a rigorous analysis of the Rule 23 prerequisites. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The party moving for certification bears the burden of showing that the requirements for certification are met. *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Rule 23 sets forth a two-part test for certifying a class action. First, to obtain class certification, plaintiff must show the four prerequisites in Rule 23(a) are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation,* 722 F.3d 838 (6th Cir. 2013) (quoting Rule 23).

---

[1] Plaintiff requests that the Court certify the proposed class for fraud in Ohio and on a national basis except Louisiana and North Dakota, and for breach of express warranty for Ohio, Alaska, California, Colorado, District of Columbia, Iowa, Kansas, Maine, Minnesota, New Hampshire, New Jersey, North Carolina, Oklahoma, and Texas.

If the threshold requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Rule 23(a) are met, "parties seeking certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.*; *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Plaintiff argues that this action can be maintained under Rule 23(b)(3), which requires a court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *In re Whirlpool* (quoting Rule 23).

Decisions on class certification should not be conditioned on the merits of the case. A court may, however, go beyond the pleadings to the extent necessary to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Id.*

In addition to the Rule 23 requirements, both parties have noted that courts in this Circuit have recognized that ascertainability of class members is an implied prerequisite of Rule 23. *See Romberio v. Unumprovident Corp.*, 385 Fed.Appx. 423, 431 (6th Cir.2009); *Givens v. Van Devere, Inc.*, 2012 WL 4092738 (N.D.Ohio 2012); *Galoski v. Applica Consumer Products*, 309 F.R.D. 419 (N.D. Ohio 2015).

**(1) ascertainability**

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mutual*

*Insurance,* 693 F.3d 532 (6th Cir. 2012)(citations omitted). "The class must be susceptible of precise definition... For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Id. See also Rikos v. The Procter & Gamble Company,* 799 F.3d 497 (6th Cir. 2015) ("In our circuit, the ascertainability inquiry is guided by *Young*... we noted that for a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.")

  Defendants assert that the proposed class is not sufficiently ascertainable because it requires individualized assessments and so is not administratively feasible. The class is premised on a self-identification method of ascertaining membership which fails to take into account that most consumers will have no demonstrable proof of having purchased the devices during the class period. Defendants point out that plaintiff paid cash and did not keep her receipt which leaves no way to trace the purchase. And, defendants contend, the self-identification method affords no safeguards to defendants because consumers for whom the devices were effective could gain membership in the class without having suffered harm.

  The Court finds the class is sufficiently ascertainable. Plaintiff maintains that its proposed class provides objective criteria that will allow every class member to easily determine if he is included in the class: Did the individual purchase one of the defendants' electronic pest repeller devices? Did the individual make the purchase in the United States? Was the purchase within the stated period? *Rikos v. The Procter & Gamble Company*, 1:11 CV 226 (S.D.Ohio June 19, 2014), involved consumer sales of a probiotic nutritional supplement. The district court rejected defendant's argument that the class was not ascertainable given that class membership

could not be reliably or feasibly ascertained. In so doing the court noted, "Courts in this Circuit routinely certify classes of purchasers of over-the-counter products where it will be impossible to identify and notice every member of the class. To deny certification on ascertainability grounds in this case would be to abandon the law in the Sixth Circuit that only requires that the class definition describe objective criteria that allows a prospective class member to identify himself or herself as having a right to recover or opt out based on the description." *Id.* at 13-14 (citing *Young, supra*). On appeal, defendant argued that there was no reliable method for identifying class members given that most consumers purchased the product from a commercial retailer, in stores or online. As such, defendant contended, there was no plausible way to verify that any one single individual actually purchased the product. In affirming the district court's decision, the Sixth Circuit found the proposed class to be defined by objective criteria: anyone who purchased the product in one of the five named states. The court stated that "these single state sub-classes can be determined with reasonable-but not perfect-accuracy. Doing so would require substantial review, likely of internal P&G data. But as the district court pointed out, such review could be supplemented through the use of receipts, affidavits, and a special master to review individual claims." *Rikos,* 799 F.3d at 526.

While in *Rikos* half of the sales were online which would provide the name and shipping address of purchasers and many customers purchased the product through their physician who could verify the purchase, the district court collected cases rejecting the notion that without receipts or proof of purchase the class is unmanageable. *Rikos* at 13. Additionally, another court in this district recently certified a class action involving purchasers of ultrasonic or electronic pest repellers. *Galoski v. Applica Consumer Products,* 309 F.R.D. 419 (N.D.Ohio Aug 28,

8

2015). There, the court found that the proposed class was defined by objective criteria: Members must have purchased the product marketed by defendant, sold under the specified trademark, that represented itself as an ultrasonic or electronic pest repeller, with model numbers provided, during the dates specified. The court noted that this Circuit does not require that defendant be able to specifically identify each class member, but only that a prospective class member be able to identify himself as having a right to recover or opt out based on the class description. The court stated that consumers who fit the class definition could provide evidence of their inclusion through purchase records of the retailers, personal receipts, return of the products, affidavits, or otherwise. Also, as herein, defendant had records of the total number of sales during the period which would alleviate "any fear that they will have to pay out on unsubstantiated claims" which would exceed their ultimate maximum responsibility.

Defendants contend that the self-identification method offers no procedural due process protections given that consumers for whom the devices were effective could be included in the class without suffering harm. But, plaintiff points out that notice in similar cases is commonly achieved through the use of publication notice by posting notice at retailers which sold the repellers, publishing notice in large newspapers with national circulation, hosting a website that contains the notice and all appropriate papers, and publishing notice on high volume internet sources. Then, during the claims process at the case's termination, verification would be required by declaration to participate in any payment available. In *Forcellati v. Hyland's Inc.,* 2014 WL 1410264 (C.D. Cal. April 9, 2014), relied upon by the district court and Sixth Circuit in *Rikos,* a class was certified of purchasers of defendant's children's cold or flu products within a prescribed time frame. The court rejected defendant's argument that the proposed class was

9

insufficiently ascertainable because, although it knew how many sales it made, there were no records confirming class membership because purchasers likely did not retain proof of purchase for such a low cost item and defendant did not have any records identifying the consumers who purchased the products through retail intermediaries.  The court also rejected defendant's due process argument: "In short, because defendants' liability will be determined in the aggregate, and they will have no claim to any leftover damages, whether any given individual is or is not a rightful class member is entirely immaterial to defendants' monetary liability in this case."  The court cited cases finding that a defendant's interest is only in the total amount of damages for which it would be liable, and not in the identities of those receiving damage awards.

Plaintiff herein points out that where no purchaser records exist, the use of an affidavit in the claims process is the standard method employed to address potential false claims. At that point, defendant could challenge individual claims appearing problematic.  As in *Galoski,* defendants' records clearly outline the total number of devices sold during the class period, and total amount collected from the sales.

The Court finds ascertainability to be established.

**(2) Numerosity**

Defendants do not dispute that numerosity is satisfied. As stated earlier, the evidence shows that 107,782 units were sold during the class period.

**(3) Commonality**

Rule 23(a)(2) "states that [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if ... there are questions of law or fact common to the class. Commonality requires the plaintiff to demonstrate that the class members

10

have suffered the same injury." *Rikos*, 799 F.3d at 505 (citations omitted).

Plaintiff maintains that there are specific, common questions in this case for which common proofs apply to all class members: 1) whether defendants' representations were based on competent and reliable evidence, 2) whether defendants' pest repeller can actually repel pests, 3) whether defendants fraudulently represented to plaintiff that their product would repel pests, and 4) whether defendants fraudulently represented to plaintiff that their product was proven to repel pests.

Defendants assert that plaintiff's first and fourth purported questions are improper on their face, let alone common questions. As to the first, defendant asserts that it has been "rendered moot" by the fact of the Efficacy Test Report which shows that defendants' representations were based on competent and reliable evidence given that two entities concluded that the repellers do repel pests. Plaintiff argues that whether the devices actually work is not litigated at this juncture but at trial. The inquiry, rather, is whether the issue of the devices' efficacy can be determined on a class-wide basis, which it can.

The Court agrees with plaintiff. In *Rikos,* a case involving the sale of an over-the-counter probiotic supplement which plaintiffs alleged did not work as advertised, the district court found commonality in the question of determining whether the product provided any digestive health benefit. On appeal, defendant argued that commonality was not established because while plaintiffs had some anecdotal evidence that the product did not work for them, there was probative evidence that the product was beneficial to some customers and some studies appeared to conclude that the product was effective in promoting digestive health. The Sixth Circuit stated,

11

> P & G misconstrues Plaintiffs' burden at the class-certification stage. Whether the district court properly certified the class turns on whether Plaintiffs have shown, for purposes of Rule 23(a)(2), that they *can prove* -not that [they] have already shown- that all members of the class have suffered the same injury.

Rikos, 799 F.3d at  505 (internal citations and quotations omitted).  Further,

> ... Plaintiffs have identified a common question -whether Align is 'snake oil' and thus does not yield benefits to *anyone*, -that will yield a common answer for the entire class and that, if true, will make P & G liable to the entire class. The district court conducted a sufficient analysis of the record evidence in finding commonality here. It concluded that no individual would purchase Align but-for its digestive health benefits, which P & G promoted through an extensive advertising campaign. If Align does not provide any such benefits, then every class member was injured in the sense that he or she spent money on a product that does not work as advertised. No more investigation into the merits (i.e., whether Align actually works) is needed for purposes of satisfying Rule 23(a)(2)'s commonality requirement.

*Id.* at 507.

Similarly, in *Galoski, supra,* the district court found commonality where the question common to all potential class members was whether defendant's product could, under any circumstances, act as a pest repeller. The court noted that no one would have bought a pest repeller had he known it was incapable of repelling pests.

Next, defendants assert that plaintiff's fourth proposed question has no basis in the Complaint given that plaintiff alleged that defendants did not possess competent and reliable scientific evidence to support its advertising claims and its sale of the products, but did not allege that defendants represented that their product was *proven* to repel pests.  In fact, defendants maintain, they did not make such a representation although it would have been justified given the results of the Efficacy Test Report.  The Court agrees with plaintiff that, as found in *Galoski* and other alleged "snake oil" cases, the representations challenged go to whether the product works at all, not at how well the product works. The Complaint alleges that the device was marketed as

12

an electronic pest repeller. Every purchaser would have relied on this representation as the product only has one purpose.  And, as in *Galoski,* no one would have purchased the device had he known it was incapable of repelling pests.

As to the second purported common question, defendants assert there is no common standard or objective measure by which the class members are to determine whether the devices actually repel pests. Defendants point out that plaintiff alleged in her Complaint that the devices did not repel the pests around her house and that the devices do not repel pests.  Yet, she testified at deposition that the spiders were somewhat controlled at her home which leaves open the possibility that the devices repelled the spiders.[2] Again, the Court finds the argument not persuasive given plaintiff's contention that the devices never work.  As in *Rikos,* the court granted certification finding that plaintiff's assertion "that Align is worthless- is capable of resolution through classwide scientific proof such that common issues predominate." *Rikos,* 799 F.3d at 520.

Finally, defendants contend that the third proposed question involves issues of an individualized nature such as interpretations of defendants' representations and the degree to which class members' expectations were derived from the representations.   Similar to the above discussion, the only purpose of the device was to repel pests. If the product was incapable of doing so, it was worthless.

The Court finds commonality to be satisfied.

**(4) Typicality**

---

[2]   Plaintiff, however, testified that she sprayed the spiders which seemed to have an effect.

> As stated in *Galoski,*
>
> ... typicality is generally satisfied if the representative plaintiff would be able to prove other class members' claims by proving his own claim... In this case, if plaintiff can prove that ultrasonic or electronic pest repellers cannot repel pests, as she is claiming, then she will, in fact, prove the other class members's claims as she proves her own.

*Galoski,* 309 F.R.D. at 423. Plaintiff asserts that her claim is typical because the wrong to her- defendant marketing and selling a product that does not do what it says it does- is the same as the wrong to the class. If the product will never, under any circumstances, repel pests, a refund claim for the product is common and identical for every customer. Defendants argue that plaintiff's claims are not typical because plaintiff's own claims for fraud and breach of express warranty are barred under Ohio law. This Court disagrees.

First, defendants argue that plaintiff's fraud claim is barred by the Ohio rule stating that a breach of express warranty claim, which is treated as a contract-based claim under Ohio law, precludes a tort (fraud) claim that is based on the same conduct and seeks no additional damages. Because both of plaintiff's claims are based on the same conduct, and the fraud claim seeks no additional damages, it is barred. The Court agrees with plaintiff, however, that even if true, this is a legal issue true of all Ohio claimants and plaintiff's claim is still typical.

Second, defendants argue that plaintiff's breach of express warranty claim is barred by her failure to provide pre-suit notice of the alleged breach. Plaintiff confirmed at deposition that she did not notify Wal-Mart, or any of the defendants, of the alleged defect prior to filing suit.

In ruling on defendants' motion to dismiss this claim based on failure to notify, this Court stated

> Under Ohio law, to state a claim for breach of express warranty, plaintiff must provide the defendant with reasonable notice of the defect. Failure to plead pre-litigation notice requires dismissal of a breach of warranty claim. *St. Clair v. Kroger Co.*, 581 F.Supp.2d

> 896 (N.D.Ohio 2008). Defendants point out that plaintiff has not alleged that it notified defendants that the product did not repel pests as advertised. Plaintiff disagrees, relying on *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40 (1989).
>
> This Court previously recognized in *The Lincoln Electric Co. v. Technitrol*, 718 F.Supp.2d 876 (N.D.Ohio 2010), that although the Ohio Supreme Court stated in *Chemtrol* that "in a proper case the filing of a civil complaint could serve as notice of breach,"
>
>> [s]ince *Chemtrol*, Ohio courts and federal courts applying Ohio law have continued to hold that a plaintiff must notify a defendant of the alleged breach prior to the complaint...The Court recognizes that under *Chemtrol*, Ohio does not have a per se rule that the filing of a complaint cannot constitute notice under § 1302.65(C)(1), but the Ohio Supreme Court was clear that a complaint could only constitute notice in "a proper case." The circumstances in this case are similar to the circumstances described by the court in *Chemtrol* that would preclude the complaint from constituting sufficient notice: defendant had no prior knowledge of the defects, and the complaint was filed a long period of time after plaintiff's damages were sustained.

*Lincoln Electric*, 718 F.Supp.2d at 843.

Ultimately, this Court concluded that the claim, generally involving issues of fact, was not subject to dismissal on the motion to dismiss.[3]

Defendants assert that now that discovery has closed, plaintiff has no evidence that defendants had actual notice of the alleged breach which would excuse her failure to provide pre-suit notice.  In fact, based on the Efficacy Test Report, defendants knew the devices were effective.

Again, the Court agrees with plaintiff that the question of whether plaintiff and the class were required to provide pre-suit notice of the breach of warranty represents a common question to all class members. The Court will not decide this issue on a motion for class certification.

---

[3] The Court also noted that defendants did not dispute that under Ohio law, plaintiff is required only to notify the immediate seller, i.e., Wal-Mart, which is not a party herein.

15

Finally, defendants contend that plaintiff's lack of reliance, an element of both remaining claims, shows that her claims are not typical of the proposed class.  Defendants assert that plaintiff's testimony establishes that she relied more on her "hope" that the device would work and her online research rather than on the representations on the product packaging. But, plaintiff testified that she purchased the device after being attracted by its packaging and reading it. Additionally, defendants' contentions regarding whether the pest repeller worked for a particular class member have no merit given plaintiff's allegation that the devices never work under any circumstances. Thus, the devices either repel pests as represented on the packaging or not- a determination made on a class-wide basis.

For the foregoing reasons, the Court finds that the prerequisites of Rule 23(a) are met.

**(5) Rule 23(b)(3)**

Defendants assert that class issues do not predominate over individual issues due to differences in state law and the nature of claims requiring individual proofs.

Plaintiff maintains that where, as here, a cause of action implicates no variation of the black letter law on the subject, a ruling for plaintiff is properly applied to every customer. Plaintiff's Complaint makes a uniform threshold challenge to the pest repeller: does it work at all, in any circumstances?  The answer is "no." Plaintiff points out that all states (except Louisiana and North Dakota which only have statutory fraud claims) recognize black letter common law fraud in the sales context:   a representation intended to be relied on by the customer, which results in purchase of the product, where the supplier knows the representation is untrue.  Defendants' conduct in providing a product used for only one reason, to repel pests, and selling it by representing that it repels pests when defendants knew it did not, is fraud in all

16

jurisdictions.   However reliance is defined, it is present where the only reason a customer buys the product is to use it as a pest repeller. Plaintiff asserts that it will present expert testimony, tracking the FTC's findings, that show the devices do not work.  If a jury agrees, then for the entire class of customers, defendants' statement to the contrary was knowingly false.  Likewise, as to Ohio fraud, the claim involves a representation about the only element of the product: that it can repel pests. All the devices contained the same packaging.

As to the breach of express warranty claim, plaintiff asserts the claims can be resolved through common legal issues in multiple jurisdictions.  Under Ohio law, this claim requires the existence of a warranty, the product failed to perform as warranted, the plaintiff provided reasonable notice of the defect, and the plaintiff suffered an injury as a result of the defect. The elements are present where the advertisement constitutes the warranty, class members relied on the warranty since the sole reason for buying the product was to repel pests, and privity of contract is not required in Ohio.  Plaintiff reiterates that the Ohio Supreme Court has rejected a rule that pre-litigation notice is required. Finally, plaintiff points out that all class members were uniformly harmed and the law of express warranty in Ohio is akin to that of those states upon which plaintiff is seeking certification: Alaska, California, Colorado, Iowa, Maine, Minnesota, New Hampshire, New Jersey, Oklahoma, and Texas.

As to the fraud claim, defendants maintain that because issues of reliance must be resolved on an individualized basis, a fraud class action cannot be certified. As discussed earlier, where, as here, the fraud is uniform through the marketing of a product whose only function is to repel pests, but never work, fraud can be demonstrated on a class-wide basis. Defendants also assert that the application of the economic loss doctrine (which generally prevents recovery in

tort of damages for purely economic loss) in product performance cases is inconsistent among the states, especially with respect to actions sounding in fraud.  But, as plaintiff points out, courts decline to employ the economic loss doctrine where, as here, there is no breach of contract claim. Additionally, defendants point to the differing states' statutes of limitations for fraud claims.  The Court agrees with plaintiff that courts have concluded that differences among the applicable statute of limitations periods are not a bar to class certification and, therefore, is not a basis for finding that common issues do not predominate with regard to the fraud claim. Finally, defendants contend that certification of an Ohio fraud class is inappropriate given the individual issues which predominate regarding reliance. Again, the Court agrees with plaintiff that, as recognized in *Galoski,* "no one would have bought a pest repeller had they known it was incapable of repelling pests."  Given that the only purpose of the devices was to repel pests and which were labeled as such, all class members must have relied on the representation that the product repelled pests.

As to the breach of warranty claim, defendants again argue that reliance requires proof on an individualized basis. The Court has already addressed this contention.  Further, as the court pointed out in *Galoski,* "it is safe to say that all, or nearly all purchasers of this product relied on the packaging name and description to identify the product and its intended purpose." *Id.* at footnote 1. Defendants also contend that should the Court find that the pre-suit notice requirement does not apply, consumers only in those states that do not require pre-suit notice may be members of the class with respect to the breach of warranty claim. But, defendants do not identify the states requiring pre-suit notice. Defendants contend that because Ohio has no privity requirement for breach of express warranty claims, only consumers from states that also

18

do not require privity for these claims may be members. Defendants identify those states as California, Colorado, New Jersey, and Texas.  But, plaintiff points out that the remaining states (Alaska, Iowa, Maine, Minnesota, New Hampshire, and Oklahoma) identified for proposed certification do not require privity either. Nonetheless, even accepting defendants' arguments regarding individual issues, they do not predominate over those of the class.  Rather, the questions of law or fact common to class members predominate.

The Court finds that predominance is satisfied.

As to superiority, the Court agrees with plaintiff that a class action is the superior method of resolving the issues here given that class members spent a small amount on the devices which plaintiff alleges do not repel pests.  It would not be feasible to hire counsel in each instance to prosecute the claim.

The Court finds Rule 23(b)(3) satisfied.

**Conclusion**

For the foregoing reasons, plaintiff's Motion for Class Certification is granted.

  IT IS SO ORDERED.

                                /s/ Patricia A. Gaughan
                              PATRICIA A. GAUGHAN
                              United States District Judge

Dated: 2/22/16