IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| JEANNE STEIGERWALD, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>vs.<br><br>BHH, LCC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC.,<br><br>     Defendants. | CASE NO. 1:15-CV-00741<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**<u>DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT WITNESS, RICHARD KAAE</u>** |

  NOW COME Defendants, BHH, LLC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC., by and through their counsel, LEAHY, EISENBERG, AND FRAENKEL, LTD., and for their Motion to Exclude the Testimony of Plaintiff's Proffered Expert Witness, Richard Kaae, state as follows:

### INTRODUCTION

  Plaintiff has proffered Richard Kaae to provide opinion testimony as to the ability of the Bell+Howell Ultrasonic Pest Repellers to repel pests.  Kaae should be barred from providing expert witness testimony because he does not possess the requisite expertise with respect to ultrasonic pest repellent devices.  Moreover, Kaae's opinions are woefully unreliable because the bases for the opinions are not scientific.  Kaae relied upon publications, authored by others which Kaae did not read, and field tests that Kaae conducted on Argentine ants only, and in a manner directly contrary to the devices' instructions and intended use.

### RELEVANT FACTS

  To meet her burden of proof in this case, Plaintiff must establish that the Bell+Howell Ultrasonic Pest Repellers are unable to repel pests as represented.  Plaintiff intends to do so

1

through the use of her proffered expert witness, Richard Kaae.  Kaae concluded that: "it is clear that ultrasonic repellers are generally unable to repel insects and small vertebrates, such as mice, in any manner".  *See* Expert Report of Richard S. Kaae attached hereto as Exhibit A.

### *Kaae Does Not Possess the Requisite Expertise*

Kaae's curriculum vitae reveals that he has no expertise in the designing or testing ultrasonic pest repellent devices.  (Doc. #25-2 at 1).  Kaae holds a PhD in "Pest Management-Entomology," and he worked as a professor of pest management.  (*Id*.)  Kaae has no prior experience with Bell+Howell Ultrasonic Pest Repellers, or any other type of ultrasonic insect or rodent repellent devices.  (Doc. #33-2 at 11-12).[1]  He has never tested any such devices prior to working on this case.  (*Id*. at 13).  When asked whether any of the courses he taught involved ultrasonic repellent devices, Kaae responded: "[w]e discussed them."  (*Id*. at 17).  When asked to identify which of the courses listed on his curriculum vitae he was referring to, he responded: "[w]ell, I've taught so many different courses during my interim, I probably taught 15 different courses, I would assume -- I wouldn't assume anything.  I am sure we talked about them in Insects and Civilization, General Entomology -- or not General Entomology, but Introduction to Arthropods."  (*Id*.; Doc. #25-2 at 1).  Kaae has never prepared written materials on ultrasonic repellent devices for use in his courses.  (Doc. #33-2 at 17).

Kaae has never been involved in the design of any pest repellent, including ultrasonic pest repellent devices, and he has never been hired to test or supervise the testing of any pest repellent.  (*Id*. at 18).  He also has never drafted or assisted in drafting warnings or instructions for any type of pest repellent.  (*Id*. at 18-19; Doc. #25-2 at 1-2).  Of the publications listed on his curriculum vitae that he authored or co-authored, none discuss, mention, or even reference

---

[1] References to page numbers in "Doc. #33-2" are to the page numbers of the deposition testimony as opposed to the page numbers stamped in the header of each page.

ultrasonic pest repellent devices. (Doc. #33-2 at 17-18). Kaae's Expert Report states that he has "served as an expert witness in a variety of entomology and rodent cases for the past several years," and lists eight cases in which Kaae was retained as an expert witness. (Doc. #33-4 at 2-3). However, none of the cases in which he served as an expert witness involved ultrasonic pest repellent devices. (Doc. #33-2 at 21). These cases dealt with bed bugs or insects harming humans or property. (*Id*. at 22).

### *Kaae's Opinions Are Not Based On Science*

Kaae identified two bases for his opinion regarding the ability of the Bell+Howell Ultrasonic Pest Repellers to repel pests. (*Id*. at 41). First, Kaae relied on various publications, authored by others. (*Id*. at 30; Doc. #33-4 at 3). Second, Kaae based his opinion on certain "field tests" conducted by Kaae at his home. (Doc. #33-2 at 40, 83). Neither basis is the product of reliable scientific principles.

**Kaae's Reliance On Publications Authored By Others Is Unscientific.**

Kaae testified that he relied on the conclusions reached by certain authors, who tested unknown ultrasonic pest repellent devices. (*Id*. at 35). Curiously, Kaae did not actually read the publications that he relied upon and listed in his Expert Report. Instead, Kaae copied the citations of the publications from a textbook. (*Id*. at 46-47, 48-49, 50, 53). The textbook, however, was not referenced in the list of "Scientific Literature Used in Opinion" in Kaae's Expert Report. (Doc. #33-4 at 3). The sole "publication" that Kaae did read were slides from a 1990 PowerPoint presentation. (Doc. #33-2 at 53-54). Even with the PowerPoint presentation, Kaae conceded that he does not know which device was tested, or which insects or rodents were used. (*Id*. at 54). Kaae described the PowerPoint presentation as "just a general analysis of ultrasonic testing in general." (*Id*.).

Kaae did not author any of the publications on which he relied; he did not discuss the publications with their respective authors; and he did not attempt to replicate the tests discussed therein. (*Id*. at 34, 36, 37). The publications make no mention of the Bell+Howell devices, and Kaae does not know what specific devices were tested, if any, by the authors of the publications. (*Id*. at 35, 38, 44). Kaae acknowledged that some of the publications dealt only with certain insects; for example, the first two publications on his list involve tests done only with cockroaches. (*Id*. at 35). He also acknowledged that in some of the publications, the authors found that the ultrasonic pest repellent devices did repel certain insects. (Id. at 36, 37, 98).

When Kaae was asked whether it is reasonable to reach a conclusion concerning a specific device without knowing whether the publication addressed that device, he responded that the publications were "evidence as to what is normally found with these types of devices." (*Id*. at 39). When Kaae was asked whether it is fair to rely on publications without knowing which devices were tested, he responded that he could do so fairly because "they were scientific reports," and "[s]cientific reports usually are referring and they go to other authors and they verify this is an acceptable scientific report…" (*Id*. at 45). Although the "publications" not read by Kaae do not reference the Bell+Howell devices, Kaae disagreed that they were irrelevant as to whether the Bell+Howell devices are able to repel pests, "[b]ecause we don't know the parameters that were used in all the tests." (*Id*. at 38).

**Kaae's Field "Tests" Were Unscientific And Irrelevant To The Issues In This Case.**

The second basis for Kaae's opinion was the result of field "tests" that Kaae conducted at his home in Huntington Beach, California in preparation for this litigation. (*Id*. at 34-35, 41, 151). Kaae testified that the only means by which the effectiveness of an ultrasonic repellent device can be tested is by utilizing two houses, infested with insects and rodents, and placing a

4

Bell+Howell device in one of the houses to observe whether the device repels the insects or rodents over a period of weeks. (*Id*. at 70, 71). Kaae testified that this is the *only* way to determine the effectiveness of the devices. (*Id*. at 91). Yet, Kaae did not perform that test. (*Id*. at 106-07). When Kaae was asked whether he considered the test using the two-house method, which he described as the *only* valid way to determine if the devices worked to repel pests, he responded that such a test made no sense. (*Id*. at 117-18). Kaae also testified that to be scientifically valid, multiple replications of the test must be performed. (*Id*. at 77).

Instead of utilizing the only valid method to test the Bell+Howell devices, Kaae decided to conduct his unscientific field tests at his home. (*Id*. at 151). Kaae used four plates containing sugar-water in four different locations *outside* of his house with a Bell+Howell device placed two feet in front of each plate. (*Id*. at 106). Kaae conducted the test to see whether ants would pass by the devices to get to the food source after given periods of time. (*Id*. at 106-07). One of the ant trails was located on Kaae's back porch, one was near an exterior fence next to his house, and one was on his front patio. (*Id*. at 111-12). Kaae could not recall the location of the fourth ant trail. (*Id*. at 112). Kaae also used a single plate containing sugar-water outside of his house and observed how many ants from an established colony underneath his house were inside the plate, which he checked twice a day. (*Id*. at 107).

Kaae acknowledged that the instructions for the Bell+Howell devices state that the devices are for "[i]ndoor use only," and acknowledged that his tests were conducted outdoors. (*Id*. at 120). The devices also are not to be exposed to "rain or moisture." (Doc. #33-5 at 2). Kaae, however, did not record the weather conditions in the area where he conducted the tests, he did not measure the dew point or moisture level for each day of the testing; and he did not know the impact of dew or moisture on the operation of the devices. (Doc. #33-2 at 124, 125).

5

While Kaae agreed that the instructions require the devices to be used indoors, he did not agree that testing the devices outdoors was contrary to their intended use. (*Id*. at 126). Similarly, while Kaae agreed that the instructions require all food to be put away, he did not agree that his tests violated that instruction, and stated that "the food had to be there for the test to be done." (*Id*. at 126-27). Incredibly, Kaae testified that it is scientifically valid to determine a product's effectiveness by testing the product outside of its intended use or purpose. (*Id*. at 139). Unsurprisingly, Kaae was unaware of a publication stating that it is scientifically valid to ascertain the effectiveness of a product by testing that product in a manner that is contrary to the product's intended use. (*Id*. at 141).

Kaae's tests involved only Argentine ants, and as such, he agreed that he had no opinion as to the ability of the Bell+Howell devices to repel any other variety of ant or any other type of insect. (*Id*. at 129). Kaae did not test the Bell+Howell devices on spiders, mice, rats, or cockroaches. (*Id*. at 130). Despite not having performed any test with these other pests and having conducted all of his tests outdoors, Kaae still holds the opinion that the Bell+Howell devices are unable to repel the un-tested pests *inside* of a house. (*Id*. at 132).

Kaae failed to determine the number of Argentine ants that were repelled by the devices when utilized contrary to their intended use. (*Id*. at 138-39). Kaae did not know how many ants he would have observed in the plates in the absence of the devices because he did not conduct any tests without the devices. (*Id*. at 134, 135-36, 140). Thus, Kaae did not know how many ants were repelled by the devices in any of his tests. (*Id*. at 138-39). He also did not know whether the devices repelled any ants or thousands of ants in his tests. (*Id*. at 140).

6

## LEGAL STANDARD—ADMISSION OF EXPERT TESTIMONY

Under Rule 104(a) of the Federal Rules of Evidence, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a). Whether a witness is qualified to testify as an expert and the admissibility of expert testimony are governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

District courts have a "gatekeeping role" in screening the use of expert testimony. A district court's gate-keeping function under Rule 702 is three-fold. *Buck v. Ford Motor Co.*, 810 F.Supp.2d 815, 822 (N.D. Ohio 2011). First, the court must determine whether a witness is qualified as an expert. *Id*. Second, the court must determine whether the testimony is reliable. *Id*. Third, the court must determine whether an expert's reasoning or methodology properly applies to the facts at issue: *i.e.*, whether the opinion is relevant. *Id*.

The proponent of the expert testimony bears the burden of showing that the witness is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact. *In re Meridia Prods. Liab. Litig.*, 328 F.Supp.2d 791, 804; see also, Buck, 810 F.Supp.2d at 823 ("[t]he proponent of the evidence has to establish that all of the pertinent admissibility requirements are met by a preponderance of the evidence").

**ARGUMENT**

I. **Kaae Lacks The Qualifications And Expertise To Testify As An Expert On The Ability Of The Bell+Howell Ultrasonic Pest Repellers To Repel Pests.**

Kaae is unqualified to provide expert testimony on the issue of whether the Bell+Howell devices are able to repel pests—the central issue in this case. As an entomologist, Kaae may well be qualified to render an opinion on insects and insect behavior in certain contexts (e.g., bed bug bites), but this case is focused on a technological device that uses ultrasonic sound to repel not only insects, but rodents as well. Kaae testified that he has no education or experience in the use of pest repellent devices, let alone the specific Bell+Howell devices at issue here. As such, Kaae is without the requisite knowledge and expertise to render an expert opinion about the ability of the Bell+Howell Ultrasonic Pest Repellers to repel pests. The subject matter about which Plaintiff intends to have Kaae testify is simply outside of his expertise and his proffered testimony should be excluded on this basis accordingly.

It is well established that an expert's opinion must have a "reliable basis in the knowledge and experience of the discipline." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000). "The United States Supreme Court and other Circuit Courts of Appeal have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise." *Wellman v. Norfolk & Western Ry.*, 98 F.Supp.2d 919, 924 (S.D. Ohio 2000). The court's is to determine whether the qualifications provide a foundation for the witness to answer a specific question. *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). "[T]he gatekeeping inquiry must be tied to the facts of a particular case, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Piskura v. Taser Int'l, Inc*., 2013 U.S. Dist. LEXIS 107611 at *5, (S.D. Ohio 2013).

8

Kaae is not "qualified as an expert by knowledge, skill, experience, training, or education" to provide testimony on the ability of *any* ultrasonic repellent device to repel pests, much less the particular Bell+Howell devices that are exclusively at issue in this case. *See* Fed. R. Evid. 702 (expert testimony is admissible if provided by "a witness qualified as an expert by knowledge, skill, experience, training, or education").  Kaae admitted during his deposition that he has utterly no experience with *any* ultrasonic insect or rodent repellent devices prior to working on this case. (Doc. #33-2 at 11-12).  Kaae has never tested *any* ultrasonic pest repellent devices before he was retained for this case, and was never hired to test or supervise the testing of any kind of pest repellent devices prior to this case to determine the effectiveness of the product. (*Id*. at 13, 19).

Kaae has not authored any publications, scientific or otherwise, on the use of ultrasonic pest repellent devices or their ability to repel pests.  The publications listed on his curriculum vitae that he either authored or co-authored do not discuss, reference, or even mention ultrasonic pest repellent devices. (*Id*. at 17-18).  Kaae has never designed any kind of pest repellent, nor has he ever drafted warnings or instructions for any kind of pest repellent. (*Id*. at 18-19).  While Kaae has been retained as an expert witness in other cases, none of those cases involved ultrasonic pest repellent devices of any kind. (*Id*. at 21).  In fact, the most involvement Kaae has had with such devices is possibly some discussion of them in the courses he taught, but he could not name a single course in which they were discussed. (*Id*. at 17).

In sum, nothing about Kaae's qualifications supports a finding that his opinions have a "reliable basis in the knowledge and experience of the discipline" to which the central issue in this case pertains.  *See Jahn*, 233 F.3d at 388.  While Kaae's educational and experiential background may indeed make him knowledgeable and even qualified as expert in general insect

9

behavior and/or pest management, the subject matter upon which this case is focused concerns an electronic ultrasonic emitting device and its capabilities to repel a variety of organisms, which is simply outside of Kaae's area of expertise. Thus, because Kaae lacks expertise in the areas relevant to the subject matter at issue, this Court should find him unqualified as an expert. *See, e.g.*, *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478-79 (6th Cir. 2008) (district court properly excluded proposed expert's testimony where his evidence pertained to area in which he lacked expertise); *Buck*, 810 F.Supp.2d at 842 ("[e]xpertise in the technology of fruit is not sufficient when analyzing the science of apples, and courts have excluded the testimony…because their expertise was not particular to the science involved in the case"). For these reasons, Kaae's testimony should be excluded.

**II.  Kaae's Testimony Is Unreliable Because His Underlying Reasoning And Methodology Is Not Scientifically Valid.**

Kaae's testimony is inherently unreliable, because the two bases upon which he relied in forming his opinions are scientifically invalid. Federal Rule of Evidence 702 provides that expert testimony is admissible where "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702. The court may consider certain factors to determine reliability, such as "[w]hether the expert is proposing to testify about matters growing naturally and directly out of research conducted independent of the litigation, or whether the expert has developed opinions expressly for purposes of testifying," and "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." *In re Meridia*, 328 F.Supp.2d at 804, citing Advisory Committee Notes, Fed. R. Evid. 702. When faced with a proffer of expert scientific testimony, the court must conduct a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. *Campbell v. City of Springboro*, 788 F.Supp.2d 637, 661 (S.D. Ohio 2011).

Kaae based his opinions on: (1) publications that he did *not* read, and which pertain to unknown devices and pests; and (2) field tests that Kaae conducted using the Bell+Howell devices in a manner contrary to the devices' intended use and instructions, and only as to Argentine ants. With respect to the publications on which Kaae ostensibly relied, he testified that he did not actually read the publications himself (except for a PowerPoint presentation), but instead obtained the citations for those publications from a textbook which Kaae failed to cite to in his Report. (Doc. #33-2 at 46-47, 48-49, 50, 53; Doc. #33-4 at 3).

Kaae's reliance on publications, which he did not read, for the proposition that ultrasonic devices are not effective, renders Kaae's opinions suspect and unreliable. Parroting the presumed conclusions of others is not a scientifically accepted method. "A scientist, however well-credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *In re Whirlpool Corp Front-Loading Washer Prods. Liab. Litig.*, 45 F.Supp.3d 724, 741 (N.D. Ohio 2014); *see also*, *Bouygues Telecom*, 472 F.Supp.2d at 729 (the court "performing its gatekeeping function necessarily must ensure that [the expert] is not merely parroting the opinions of others"). Further, none of the publications relied upon by Kaae dealt with the Bell+Howell devices at issue in this case. Kaae simply does not know which devices were tested and discussed in the publications. (Doc. #33-2 at 35, 38, 44). Kaae also acknowledged that some of the publications dealt only with certain insects and not others, and in other publications, Kaae did not know whether the devices were tested on insects or rodents. (*Id.*). Kaae described one of the publications as "just a general analysis of ultrasonic testing in general." (*Id*. at 54).

Despite all of this, Kaae believes it is perfectly reasonable for him to rely on the data and conclusions reached in these publications in forming his opinions as to the ability of the Bell+Howell devices to repel pests. This practice, however, has been found to be unacceptable.

Indeed, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Buck*, 810 F.Supp.2d at 826. Moreover, because none of the publications actually involved the Bell+Howell devices, Kaae's opinion as to their ability to repel pests is improper extrapolation, which is a sign of unreliability. "A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *Id.*; *see also*, *In re Meridia*, 328 F.Supp.2d at 804 (expert's unjustified extrapolation to form an unfounded conclusion is a factor to be considered for exclusion of testimony). The Sixth Circuit has specifically cautioned against allowing expert testimony where the expert relied on improper extrapolation. *See Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012), *citing Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)).

Thus, because Kaae relied on publications he never even read, and because those publications pertain to devices other than the Bell+Howell devices and deal with subject matter beyond Kaae's knowledge and expertise, Kaae's proffered expert testimony is unreliable and should be excluded accordingly. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001) (affirming exclusion of testimony, noting "that [the expert's] study was conducted and the experts' opinions were formed for purposes of litigation"); *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F.App'x. 182, 189 (6th Cir. 2012) (affirming *Daubert* exclusion where proffered expert "had no independent expertise from any other source other than the six articles Plaintiff's counsel gave him").

The second basis for Kaae's opinions as to the Bell+Howell devices is equally unscientific. Kaae performed "field tests" on the devices, which were conducted outdoors using only Argentine ants with an open food source. (Doc. #33-3 at 106-07, 129). To be admissible,

proffered expert testimony must be based "on a reliable and scientifically valid methodology that fits with the facts of a case." *In re Meridia*, 328 F.Supp.2d at 803-04.  Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93.  "Testimony is unreliable where it has not been tested and is not shown to be accepted in the relevant scientific community." *Lawrence v. Raymond Corp*., 501 F. App'x 515, 518 (6th Cir. 2012).

Kaae's field tests are completely unscientific for a multitude of reasons.  First, Kaae testified that the *only* means to test an ultrasonic repellent device is by using two different houses infested with insects or rodents and placing a Bell+Howell device in only one of the houses to observe whether the device repels the pests.  Not surprisingly, Kaae did not even consider testing the devices in this manner.  (Doc. #33-2 at 70-71, 91, 117-18).

Second, Kaae's field tests were conducted in a manner expressly contrary to the product's instructions as to the proper use of the Bell+Howell devices.  Although Kaae conceded that the devices are to be used indoors only, Kaae chose to conduct his tests outdoors.  (*Id*. 106-07).  Kaae did not know if the outdoor weather conditions affected the devices.  Kaae did not know the dew points during his tests or even the weather conditions.  (*Id*. at 124, 125).  Yet, users are expressly warned not to expose the devices to "rain and moisture." (Doc. #33-5 at 2).  In similar vein, Kaae agreed that the instructions require all food to be put away, but chose to provide an attractive food source to the ants in violation of the instructions.  (*Id*.; Doc. #33-2 at 126-27).  Kaae admitted that he was unaware of any publication that would support the notion that it is scientifically valid to ascertain the effectiveness of a product by testing it in a manner that is contrary to the product's intended use.  (Doc. #33-2 at 141).

13

Third, the most egregious portion of Kaae's field test was that Kaae chose not to use a "control" to determine the ability of the devices to repel the ants. Kaae admittedly had no way to compare the number of ants found in the plates of sugar-water *with* the devices operating to the number of ants in plates of sugar-water *without* the devices. Kaae purposely chose *not* to provide the ants with an alternative. Consequently, Kaae does not know whether the number ants would have been different without the devices operating. (*Id*. at 134, 135-36, 140). Not only does Kaae have no idea as to how many ants the devices repelled, he could not even say if the devices repelled any ants at all or if they repelled ants by the thousands. (*Id*. at 138-39, 140).

Finally, Kaae developed the tests only for use in this case, his method of testing is not generally accepted, and his tests were not reviewed by other experts—all of which favor exclusion of his testimony. *See Mike's Train House, Inc. v. Lionel, L.L.C*., 472 F.3d 398, 408 (6th Cir. 2006) (excluding expert's opinions because expert created methodology solely for purposes of litigation, and there was "no evidence that his methodology had ever been tested, subjected to peer review, possessed a known or potential rate of error, or enjoyed general acceptance"); *Conde v. Velsicol Chem. Corp*., 804 F. Supp. 972, 1022 (S.D. Ohio 1992) ("[p]rinciples or methodologies are 'generally accepted' when they are 'sufficiently established to have gained wide acceptance in the field to which [they] belong'"); *Pride v. BIC Corp*. 218 F.3d 566, 578 (6th Cir. 2000) ("Daubert and its progeny make clear that 'proposed [expert] testimony must be supported by appropriate validation'"). For these reasons, Kaae's opinions lack a proper basis and, therefore, his testimony does not satisfy the reliability standards of Rule 702 and *Daubert*. The Court should exclude Kaae's testimony accordingly.

## CONCLUSION

WHEREFORE, Defendants, BHH, LLC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC., respectfully request that the Court enter an order excluding the testimony of Plaintiff's proffered expert witness, Richard Kaae.

                                          Respectfully submitted,

                                          **BHH, LLC, VAN HAUSER, LLC,**
                                          **and E. MISHAN AND SONS, INC.**

                            By:      */s/ Howard B. Randell*
                                          One of Their Attorneys

Howard B. Randell
Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
Fax: (312) 368-4562

*Counsel for Defendants*
*BHH, LLC, VAN HAUSER, LLC,*
*and E. MISHAN AND SONS, INC.*