IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| JEANNE STEIGERWALD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BHH, LCC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC.,<br><br>Defendants. | CASE NO. 1:15-CV-00741<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT WITNESS, RICHARD KAAE** |

NOW COME Defendants, BHH, LLC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC., by and through their counsel, LEAHY, EISENBERG, AND FRAENKEL, LTD., and for Defendants' Reply Memorandum of Law in Support of their Motion to Exclude the Testimony of Plaintiff's Proffered Expert Witness, Richard Kaae, state as follows:

## INTRODUCTION

Defendants have filed a Motion to Exclude the opinions of Plaintiff's proffered expert witness, Richard Kaae. (Doc. #34). Plaintiff has proffered Kaae to provide expert testimony as to the efficacy of Defendants' ultrasonic pest repellent devices. Kaae should be barred from providing opinion testimony because he lacks expertise with respect to pest repellent devices in general and, in particular, ultrasonic pest repellent devices. Moreover, even if Kaae is found to be qualified with respect to the effectiveness of ultrasonic pest repellent devices, Kaae's opinions should be barred because Kaae's methodology in reaching his opinions is egregiously unscientific and flawed. Kaae relies upon the publications of others, which did not read, and tests, which Kaae conducted contrary to the devices' intended use.

In response to Defendants' objections to Kaae's qualifications and methodology, Plaintiff has filed a Brief in Opposition, which fails to satisfy Plaintiff's burden to show that Kaae has the

1

necessary expertise to ascertain the effectiveness of products designed to repel insects and rodents. (Doc. #36). In addition, plaintiff has completely failed to show that the methodology employed by Kaae in reaching his opinion is in any way scientifically valid. Plaintiff utilizes a "kitchen sink" approach to argue irrelevant and immaterial points in hopes that this Court will sift through Plaintiff's arguments and somehow find a basis to accept Kaae as a reliable expert. An examination of Plaintiff's arguments confirms that Plaintiff has failed to satisfy her burden of proof. Thus, this Court should bar Kaae's testimony and grant Defendants' Motion to Exclude.

## ARGUMENT

Plaintiff has failed to satisfy her burden to show that her proffered expert is qualified to render expert opinions as to the effectiveness of the ultrasonic pest repellent devices and that the methodology employed by her proffered expert is scientifically valid. Plaintiff concedes that Kaae has no experience with ultrasonic pest repellent devices and no experience with pest repellent devices in general. Moreover, Kaae's opinions are unreliable because the methodology employed by Kaae in reaching his conclusions as to the effectiveness of Defendants' ultrasonic pest repellent devices is scientifically unsound.

**I.    Plaintiff Fails to Meet Her Burden to Establish that Kaae is Qualified to Testify as to the Efficacy of the Bell+Howell Devices.**

Plaintiff has failed to satisfy *her burden* to establish that Kaae has the requisite knowledge and expertise to testify as an expert witness in this case. Nothing within Kaae's background—be it his education, experience, knowledge, training or skill—qualifies him to provide relevant expert testimony on the effectiveness of any ultrasonic pest repellent device, let alone the Bell+Howell device at issue. (Doc. #34 at 8-10). Plaintiff offers nothing to overcome Defendants' arguments, through establishing by a preponderance of the evidence, that Kaae is, in fact, qualified to testify as an expert on the sole disputed issue of material fact. *See Buck v. Ford*

*Motor Co.*, 810 F.Supp.2d 815, 823 (N.D. Ohio 2011) (the proponent of the evidence has to establish that all of the pertinent admissibility requirements are met by a preponderance of the evidence). Not only does Kaae literally have no background in ultrasonic pest repellent devices, his "qualifications" reveal that he has no background in *any type* of pest repellent product:

- Kaae has no education, formal or otherwise, in any aspect of *any type* of pest repellent product (Doc. #32-2 at 11-12; Doc. #25-2 at 1);
- Kaae has no experience in the use of *any type* of pest repellent product (Doc. #32-2 at 11-12, 16);
- Kaee has never designed, or drafted warnings or instructions for, *any type* of pest repellent product (Doc. #32-2 at 18-19);
- Kaae has never tested or supervised the testing of *any type* of pest repellent product (Doc. #32-2 at 13, 18);
- Kaae has never authored any publications on *any type* of pest repellent product (Doc. #32-2 at 20; Doc. #25-2 at 1-2); and
- Kaae has never testified as an expert on *any type* of pest repellent product (Doc. #32-2 at 21-30).

In sum, there is simply no evidence that Kaae has any knowledge of the principles or characteristics relevant to the capabilities of an ultrasonic pest repellent device, or to *any type* of pest repellent product.

Plaintiff attempts to excuse Kaae's lack of knowledge and expertise by making irrelevant comparisons between Kaae and Defendant's expert witness, Dr. Jeffrey Brown. (Doc. #36 at 1-2). In so arguing, Plaintiff is apparently under the mistaken impression that she can successfully meet her burden of proof by identifying purported shortcomings in another person's qualifications. The *qualifications of Dr. Brown have no relevance to Kaae's lack of qualifications* and have no bearing on Plaintiff's burden to *affirmatively establish* that *her own expert* is qualified to testify on the devices' ability to repel pests. *See* Fed. R. Evid. 702 ("a witness [must be] qualified as an expert by knowledge, skill, experience, training, or education").

In arguing that Kaae is qualified to testify as an expert *in this case*, Plaintiff emphasizes that Kaae "has studied insects and pest management for over 50 years," "[h]e earned a BS in entomology and pest management," "[h]e was awarded a PhD in pest management and entomology," and "[h]e was a professor of pest management." (Doc. #36 at 1). Plaintiff also states that "[u]nder Sixth Circuit law, 'Rule 702…is to be broadly interpreted.'" (*Id.* at 3).

Initially it should be pointed out that the Sixth Circuit has also cautioned that the "liberal interpretation of this requirement [for expert witnesses] does not mean that a witness is an expert simply because he claims to be." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). Plaintiff completely fails to explain how Kaae's particular background as an entomology professor qualifies him to testify as an expert on the capabilities of the Bell+Howell ultrasonic pest repellent devices. The witness's expertise must be "particular to the science involved in the case." *Buck*, 810 F.Supp.2d at 842. Indeed, "the Court's role is to examine 'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). Further, "[a] proposed expert witness must show that he has reliably applied his particular knowledge and expertise to the specific facts of the case." *Piskura v. Taser Int'l, Inc.*, 2013 U.S. Dist. LEXIS 107611, *27 (S.D. Ohio 2013); *see also*, *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (an expert witness relying on experience must explain "how that experience that experience is reliably applied to the facts").

Here, Plaintiff fails to show how Kaae's background in entomology qualifies him to opine about the capabilities of the Bell+Howell device, an electronic technological device with which Kaae admittedly has no experience. Plaintiff even concedes that "[o]f course," Kaae "has no experience with ultrasonic pest repellers," and explains that Kaae's lack of exposure is because "Kaae teaches and works in the field of pest management." (Doc. #36 at 1).

Plaintiff is simply unable to connect Kaae's background to the area of knowledge and expertise involved in the operation and capabilities of an ultrasonic pest repellent device, which incidentally is intended to repel not only insects but rodents as well. In other words, Plaintiff has not, and cannot, establish that Kaae's knowledge in entomology makes him any more qualified than a layperson to testify about the ability of these devices to repel pests.

II. **Kaae is Unqualified, But Not Simply Because He Has Not Authored Publications on Ultrasonic Pest Repellent Devices or Designed Any Type of Pest Repellent, or Due to a "Lack of Specialization" in the Field of Ultrasonic Pest Repellers.**

Plaintiff misreads Defendants' argument concerning Kaae's lack of qualifications. Plaintiff mistakenly believes that the "argument is premised on Dr. Kaae not having authored any publications on ultrasonic pest repellent devices, or designed any kind of pest repellent." (Doc. #36 at 2). Plaintiff's misreading causes her to assert that "no requirement exists that an expert must have designed a device, or authored a publication about it, to offer testimony as to its efficacy," and that a witness need not "actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products." (*Id*. at 2-3).

Contrary to Plaintiff's understanding of Defendants' argument, Kaae is not unqualified for any *one* reason. Defendants have not argued that Kaae is unqualified because he has not authored any publications on ultrasonic pest repellent devices or because Kaae has not designed any such devices, or even because Kaae has no practical experience with these devices. Also, Defendants certainly have not argued that such requirements are necessary to qualify a witness as an expert. However, Defendants have argued that there is literally "*nothing*" about Kaae's background that qualifies him to testify as an expert *on the issue of fact to be resolved in this case* any more than a layperson is qualified to provide such testimony. Again, it is *Plaintiff* who has the burden to show otherwise, but she has utterly failed to do so.

Plaintiff argues, albeit inappropriately, that "federal courts have routinely held that testimony by an expert on a specific topic is admissible, even if the expert lacks specialization in that particular field," and that "Kaae's lack of specialization in the field of ultrasonic pest repellers is not a basis for excluding his testimony." (Doc. #36 at 3, 4). Plaintiff once again seeks to side-step the issue. Defendants have not argued that Kaae is unqualified because he lacks specialization in the field of ultrasonic pest repellent devices. Rather, Defendants have argued that "*nothing*" in Kaae's background makes him any more knowledgeable than someone without his background to testify about the capabilities of a device with which he has no experience and about which he has no education. *See e.g., Simmons v. Novartis Pharms. Corp*. 483 F. App'x 182, 190 (6th Cir. 2012) (knowledge of a dentist trained in oral surgery and an expert in treating teeth and the mouth and diagnosing infections and other diseases held to not qualify him to evaluate the cause of plaintiff's osteonecrosis of the jaw); *see also*, *Sigler v. Am. Honda Motor Co*., 532 F.3d 469, 478-79 (6th Cir. 2008) (proposed expert's testimony excluded where it pertained to area in which he lacked expertise). Plaintiff comes no closer to establishing that Kaae is qualified as an expert witness in this case.

**III.    Kaae's Reliance on Publications, Which Kaae Did Not Read, Concerning Devices Kaae Cannot Identify, Is the Epitome of Unscientific Reasoning.**

In their Motion, Defendants argued that Kaae's reliance on the testing and conclusions of others found in publications, which Kaae did not read, as a basis for Kaae's own opinion was ridiculously unscientific. It is undisputed that Kaae did not read the publications that form the basis for Kaae's opinions, and that Kaae does know which insects or devices were tested by the authors of the unread publications.

In her Brief, Plaintiff fails to directly address Kaae's disturbing methodology. Instead, Plaintiff attempts to side-step Kaae's peculiar method by arguing that "Kaae may testify that the

opinions of other researchers dovetail with his own," and that "[t]hat is precisely what Dr. Kaae has done here." (*Id*. at 4, 5).

In apparent acknowledgment of Defendants' position, Plaintiff does not even attempt to explain how Kaae's failure to *actually read the publications* he claims to have relied upon, but which are listed the "Scientific Literature Used in Opinion" section of his Expert Report, can ever be considered an accepted practice in the scientific community. Kaae copied the citations of those publications from another textbook, which Kaae intentionally did not cite in his Report. (Doc. #33-2 at 46-47, 48-49, 50, 53). Kaae testified at his deposition:

> Q. Okay.· Is it fair to say that with respect to all of the publications listed on Page 3 of your report, you obtained the citations of those publications in the Mallis textbook?
> A. And their analysis of what was in the publications.
> Q. And we are talking about the Mallis textbook analysis of those publications that you have listed on Page 3 of your report, right?
> A. Yes.
> Q. Okay.· Does the Mallis textbook -- does it have several editions to it?
> A. Yes.
> Q. What edition did you review to obtain the citations that you have listed here under Numeral 5 on Page 3 of your report?
> A. Most recent edition.
> Q. Do you know -- do you recall the year?
> A. No, I don't.
> \*\*\*
> Q. I understand you read the Mallis textbook that references some of the ·publications that are listed on Page 3 of your report; correct?
> A. Yes.
> Q. But the actual publication that you have listed on Page 3 of your report other than the Bell and Howell Efficacy Tests, you have not reviewed those specific publications; is that correct?
> A. Other than Number 6, yes.
> Q. So, other than Number 6 on Page 3 of your report and the Bell and Howell Test Report Efficacy Test, *you haven't reviewed any of the other publications listed on Page 3 of your report; fair*?
> A. *Fair*.

(*Id*. at 50, 53) (emphasis added).

Plaintiff additionally argues that Kaae properly relied on the data from the various studies contained in the publications, which he did not read, and about devices Kaae cannot identify, because "none of the studies concluded that any ultrasonic pest repeller could drive pests from a home." (Doc. #36 at 5). Plaintiff's line of reasoning is wholly misguided and circular. Plaintiff's argument is that Kaae justifiably relied on the publications because the publications, which Kaae did not read, is consistent with Kaae's opinions. This simply makes no sense. The study, actually a PowerPoint presentation, showed that the devices had some effect in repelling pests from a home. In fact, Kaae testified at his deposition as follows:

> Q. But what I mean getting at, I think you have listed these publications to state that these publications and the authors did whatever study they did and determined that the ultrasonic repellent that was used in those studies and publication did not repel whatever insect or rodent may have been looked at in those publications; is that fair?
> A. Yes.
> Q. Have you discussed with any of these authors of these publications the work that is set forth in the publications?
> A. No.· I would add that Number 5 did a multiple testing, and *some of them had some effects on certain insects.*

(Doc. #33-2 at 35-36) (emphasis added).

Ultimately, Plaintiff utterly fails to show that Kaae's methodology in reaching his opinion is accepted in the scientific community. Relying upon publications, tests and opinions of others, without ever actually reading those publications is exactly the type of junk science that should be excluded. It is no different than having a non-expert rely on Wikipedia to provide expert testimony. College students are expelled for employing such egregious tactics. The standard for allowing expert testimony should be no less. *See* Adv. Comm. Note to Rule 702 ("[t]The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony

must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded").

### IV. Kaae's Chosen Method of Testing is Unreliable Because It Fails to Satisfy Any of the Factors Courts Use to Assess Reliability.

Plaintiff argues that "Kaae's methodology is reliable," and that "the 'grounds for the expert's opinion merely have to be good, they do not have to be perfect.'" (Doc. #36 at 8). Plaintiff asserts that "[t]he touchstone of reliability is helpfulness to the finder of fact," and that "Kaae's methodology will be helpful to the finder of fact," because "[t]he jurors could conclude from Dr. Kaae's report that ants will not be deterred or diverted by the Defendants' product, much less driven out of the house." (*Id.* at 9)

First, Plaintiff's quotation as to the "touchstone of reliability" has been shortened to the point that it no longer reflects the court's expression of the law. In actuality, the court in Plaintiff's cited case stated that the "ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Thus, the "touchstone of reliability" is not merely "helpfulness to the trier of fact."

Kaae's chosen method of testing the devices at issue is not reliable because it fails to satisfy any of the factors that courts use to assess reliability. In particular, Kaae's "field tests" were conducted in a manner expressly contrary to the product's instructions as to the proper use of the Bell+Howell devices. Despite conceding that the devices are to be used indoors only, Kaae chose to conduct his tests outdoors. (Doc. #32-2 at 106-07). Although users are expressly warned not to expose the devices to "rain and moisture," Kaae did not know if the outdoor weather conditions affected the devices, and did not know the dew points during his tests or even

9

the weather conditions. (*Id*. at 124, 125; Doc. #33-5 at 2). While Kaae agreed that the instructions require all food to be put away, Kaae chose to provide an attractive food source to the ants in violation of the instructions. (Doc. #33-2 at 126-27). Further, Kaae chose not to use a "control" to determine the ability of the devices to repel the ants, and had no way to compare the number of ants found with the devices versus without them operating. (*Id*. at 134, 135-36, 140). Thus, any claim that Kaae's methodologies are reliable—to show the effectiveness of the devices for their intended use—is refuted directly by the testimony provided by Kaae himself. Kaae's chosen tests are flawed well beyond the point of unreliability.

Finally, Plaintiff's argument—that Kaae's testimony will be helpful to the finder of fact, because jurors could conclude from it that ants will not be deterred or diverted by the Bell+Howell devices and that ants will not be driven out of a house—embodies one of the central dangers presented by admitting Kaae's testimony. "The Supreme Court in *Daubert* 'intended to exclude 'junk science'—unsupported testimony or evidence cloaked in the credentials of a testifying expert—that would confuse or mislead rather than 'assist the trier of fact.'" *Best v. Lowe's Home Ctrs., Inc*., 563 F.3d 171, 176-77 (6th Cir. 2009)). Here, the admission of Kaae's testimony would cloak Kaae in the credentials of an expert when, in reality, there is nothing about his background that qualifies him as such with respect to the issue to be resolved in this case, and because Kaae's methodologies have no indicia of reliability, Kaae's testimony will very likely mislead the jury rather than assist them. Plaintiff, therefore, has failed to show by a preponderance of evidence that Kaae's testimony is reliable and warrant its admission. The Court should exclude Kaae's testimony accordingly.

**V.     Plaintiff's Attempt to Distinguish *Buck v. Ford Motor Company* from this Case is Pointless, and Unavailing in Any Event.**

Plaintiff devotes a considerable portion of her Brief to argue that *Buck v. Ford Motor Co.*, 810 F.Supp.2d 815, 826 (2011) "is inapplicable to this case." (Doc. #36 at 5-6). Defendants previously cited *Buck* for the proposition that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." (Doc. #34 at 12). Plaintiff, argues that unlike in *Buck* where the expert's causation testimony was excluded because it had not been tested, here "Kaae conducted his own tests…." (Doc. #36 at 6).

Plaintiff's argument is misplaced, mainly because Defendants cited *Buck* only for the proposition of law set forth above—not for the factual similarities between *Buck* and this case. Nevertheless, Plaintiff is wrong in stating that Kaae's "theory" has been "tested by other scientists." Plaintiff misunderstands that the court in *Buck* was not referring to a "theory," such as "ultrasound does not deter pests" as Plaintiff suggests, which is actually Kaae's conclusion. Instead, the *Buck* court was concerned with "the reliability of scientific testimony." *Buck*, 810 F.Supp.2d at 822. In assessing the reliability of scientific testimony, the *Buck* court stated that "[t]he focus must be on the principles and methodologies on which the expert's opinion is based, and not on the merits of the expert's conclusions." *Id*. The *Buck* court then listed several factors to be considered in assessing the reliability of scientific testimony, including: whether a theory or technique can be (and has been) tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community. *Id*.

As applied to this case, the factors are examined with respect to Kaae's "field tests" and the methodology Kaae used in conducting those tests. Contrary to Plaintiff's misunderstanding of *Buck*, the factors are not examined with respect to Kaae's conclusion that "ultrasound does not deter pests." And when the factors are examined with respect to Kaae's "field tests," none of the factors are satisfied by the methodologies on which Kaae's testimony is based.

The methodologies employed in Kaae's "field tests" have not been tested; his methodologies have not been subjected to peer review or publication; Kaae has no idea whether there is a high or potential rate of error associated with his methodologies, and Kaae employed no standards to control his experiments (such as a control group, adherence to the product instructions, control of humidity, etc.); and the methodologies employed by Kaae in his field tests do not enjoy general acceptance within a relevant scientific community because they have not even been reviewed within the scientific community. *See Buck*, 810 F.Supp.2d at 822; *In re Meridia*, 328 F.Supp.2d at 803-04 (setting forth same factors identified in *Buck*); *see also*, *EEOC v. Kaplan Higher Learning Edu*, No. 1:10 CV 2882, 2013 U.S. Dist. LEXIS 11722, *20 (N.D. Ohio 2013) (finding that plaintiff failed to present sufficient evidence that expert's use of "race raters" as method to test his conclusions was reliable, and excluding expert testimony where plaintiff offers no evidence sufficient to satisfy any of the *Daubert* factors). Thus, because Plaintiff has no evidence to satisfy any of the factors relevant to assessing the reliability of the methodologies that Kaae used in his "field tests," Kaae's opinions based on such methodologies must be excluded accordingly.

**VI.  Kaae's Testimony about Testing Two-Houses is *Not* Taken Out of Context.**

Plaintiff argues that "Defendants have taken Kaae's testimony out of context regarding testing two houses." (Doc. #36 at 6). Defendants previously pointed out that after identifying the only proper method to test the ability of the devices to repel pests, Kaae chose not to use that

very method. (Doc. #34 at 4-5, 13). Plaintiff, however, claims that Defendants' "argument misconstrues Dr. Kaae's testimony." (Doc. #36 at 6-7). Plaintiff incredibly claims that "Kaae did not testify that the only way to test whether these devices are *ineffective* is through a two-house test. Instead, he suggested that a two-house test, which was postulated by defense counsel, is the only way for the Defendant to prove that the Defendant's devices are effective in driving pests out of the house." (*Id*. at 7) (emphasis in original).

Plaintiff's argument needs no response, because Kaae's testimony speaks for itself:

A.  In order to do a test on that to find that out, you would have to take two separate houses, all right, introduce a bunch of cockroaches, or maybe have an infestation, keep that device on constantly and see if it drives them out after a given period of time, weeks. ***That is the only way you could test that to prove that it actually will repel or drive out the pest species out after a structure***. Same thing with rats.· Same things with mice.
***
Q.  Is it your opinion that the only way you could prove whether the Bell and Howell device is effective or not is to test the Bell and Howell device by using two houses, infesting them with the insects and rodents, and then having the Bell and Howell device activated in one of the homes, and essentially examine the results over a certain number of days, is that fair?
A.  That has never been done, but yes, that is something you could do.
Q.  Is that the -- I thought you said that was the only way you could prove or disprove the effectiveness of the Bell and Howell device is to use two houses -- structures, and then infest them with the insects or the rodents that the device is supposed to repel with one of the homes having the activated Bell and Howell device and the other home not having it; is that the only way to prove or disprove the effectiveness of the device?
A.  Well, you could do the same thing if you had two structures that were already heavily infested would be another alternative.
Q.  It would be cheaper than having bring in the --
A.  Sure.
Q.  Okay. But is that the only way that you believe as an expert that you could be able to definitively prove or disprove the effectiveness of the Bell and Howell device?
A.  You mean in a real life situation? That is exactly what I am talking about.
Q.  Is that your --
A.  Yes, yes.

<pre>                                    ***
</pre>
Q. So, is it your opinion that unless an ultrasonic repellent device is tested in the two house field test that we talked about earlier, that testing would not be valid to determine the effectiveness of the particular device being tested; is that fair?
A. In general or as what was done by Bell and Howell?
Q. No, no, in general.
A. In general, who knows what -- depends on the product.
Q. But if we are discussing an ultrasonic·pest repellent -- and not in particularly the Bell and Howell device, but in general ultrasonic pest repellents; is it your opinion that the only way that the effectiveness of those products can be proven or disproven is to do the two house field test scenario that you talked about?
A. ***Yes, absolutely***.

(Doc. #33-2 at 70, 71-73, 90-91).

Thus, Kaae's testimony, that conducting tests with two houses is the *only* method by which the ability of the Bell+Howell devices to repel pests can be properly be assessed, has not been taken out of context. Further, Kaae's failure to conduct his "field tests" in manner consistent with this testimony provides yet another reason to find that his testimony, and the bases therefor, are unreliable.

## CONCLUSION

WHEREFORE, Defendants, BHH, LLC, VAN HAUSER, LLC, and E. MISHAN AND SONS, INC., respectfully request that the Court enter an order excluding the testimony of Plaintiff's proffered expert witness, Richard Kaae.

<pre>                              Respectfully submitted,

                              BHH, LLC, VAN HAUSER, LLC,
                              and E. MISHAN AND SONS, INC.


                         By:  /s/ Robert Ostojic
                              One of Their Attorneys
</pre>

Howard B. Randell
Robert Ostojic
Scott Wing
LEAHY, EISENBERG & FRAENKEL, LTD.
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel. (312) 368-4554
Fax: (312) 368-4562
***Counsel for Defendants***
***BHH, LLC, VAN HAUSER, LLC,***
***and E. MISHAN AND SONS, INC.***

\\lefpl\Prolaw Files\Documents\E. MISHAN & SONS\16713\PLEADINGS\335479.docx